**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

| | | |
|---|---|---|
| JONATHAN A. BLOOM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil  No. 5:16-cv-121 |
| | ) | |
| ALEX AZAR, | ) | |
| Secretary of the U.S. Department of Health | ) | |
| and Social Services, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MOTION TO ALTER OR AMEND JUDGMENT</u>**

Dr. Bloom respectfully files this motion to alter or amend the judgment entered on January 30, 2018 to address an error regarding the dismissal of some of his claims on jurisdictional grounds.  Although the base finding that a continuous glucose monitor ("CGM") qualifies as durable medical equipment ("DME") is correct, the jurisdictional aspect represents clear/manifest error and will have a profound effect on judicial review of Medicare program denials.

This Court's decision is contrary to controlling authority from the United States Supreme Court, whose authority was not addressed.  In *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005), the Supreme Court addressed exactly the situation present here, *i.e.*, some claims met an amount-in-controversy requirement and others not.  In a detailed analysis, the Supreme Court addressed the effects of § 1367 supplemental jurisdiction and held: "[I]t is clear beyond peradventure that § 1367(a) provides supplemental jurisdiction over federal-question cases where some, but not all, of the federal-law claims involve a sufficient amount in controversy." *Id.* at 562.  In his earlier papers, Dr. Bloom cited *Pierre v. Planet Automotive,*

*Inc.*, 193 F.Supp.3d 157 (E.D. N.Y. 2016) as an illustration of this approach but this Court did not address that case, the cases referred to therein, or the reasoning thereof.

Dr. Bloom's further research on this issue has also uncovered Medicare's own guidance indicating that the Court has jurisdiction over all the claims and that Dr. Bloom followed the Department's guidance on this issue.  This authority is directly contrary to the Department's arguments in this case and was not brought to the attention of the Court by the Department.

Respectfully, the Court should alter/amend the judgment to indicate that M-15-1505 and M-16-10554 are within the Court's jurisdiction and subject to the same findings and Order as M-15-4332.[1]

## DISCUSSION

### I.  Legal Background

In essence, FED.R.CIV.P. 52(b) and 59(a)/(e) provide overlapping relief and are frequently analyzed together.  *See, e.g., Hartford Roman Catholic Diocesan, Corp. v. Interstate Fire & Casualty Co.*, 2017 WL 3172536 (D. Conn. July 26, 2017) (Arterton, J.); *U.S. v. Cain*, 2017 WL 1456980 (W.D. N.Y. April 25, 2017) (Arcara, J.).   Under those Rules, a district court has the power to amend its prior judgment/findings, including the power to completely reverse and withdraw a prior judgment.  *See, e.g., National Metal Finishing Co., Inc. v. Barclays American/Commercial, Inc.*, 899 F.2d 119, 122-24 (1st Cir. 1990).  One standard for amending/altering/withdrawing a prior judgment is "clear legal error/manifest error of law."  *See, e.g., Munafo v. Metropolitan Trans. Auth.*, 381 F.3d 99, 105 (2nd Cir. 2004).  "Manifest error" is an "error that is plain and indisputable, and amounts to a complete disregard of the controlling law."  *See, e.g., Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004).  Another standard is: whether "the moving

---

[1] Although Dr. Bloom believes the Court's application of FED.R.CIV.P. 18, *inter alia*, is also in error, Dr. Bloom does not believe that those matters are the proper subject of a motion to alter or amend and therefore does not address that matter here.

party can point to controlling decisions or data that the court overlooked – matters in other words that might reasonably be expected to alter the conclusion reached by the court." *See Sharder v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2nd Cir. 1995). Rules 52 and 59 "allow a court to correct its own errors and avoid unnecessary appellate procedures." *Venegas*, at 190.

Under the Rules, a motion seeking relief is timely if filed within 28 days of the order complained of/entry of judgment.

## II. Supplemental Jurisdiction

Respectfully, the Court's decision that it lacks supplemental jurisdiction to consider M-15-1505 and M-16-10554 represents clear/manifest error and the Court overlooked controlling authority from the Supreme Court.

Before the passage of § 1367 in 1990, the courts developed case law addressing jurisdiction in the areas of what was then called pendant claim, pendant party, and ancillary jurisdiction. This case law culminated in the Supreme Court's decision in *Finley v. U.S.*, 490 U.S. 545 (1989). In *Finley*, the Court held that federal question jurisdiction had to be established independently for each party. Thus, even if federal question jurisdiction existed as to one party, claims against other parties that were part of the same case or controversy could not be asserted unless federal question jurisdiction could be established over those parties independently. At the time, it was understood that this was inefficient and inconvenient and the Supreme Court indicated that Congress could change the law if it so chose. *Id*. at 555-56.

As recounted by the Supreme Court in *Exxon*, Congress responded by passing § 1367. *Exxon*, 545 U.S. at 557. There, in a diversity case, one group of plaintiffs' claims met the amount-in-controversy requirement while another group of plaintiffs' claims did not. Jurisdiction under § 1367 was alleged for the parties/claims not meeting the amount-in-

controversy requirement.  The Court rebutted the contention that, just as diversity had to be preserved, the amount-in-controversy over each plaintiff/claim was necessary for jurisdiction.  In doing so, the Court noted:

> After all, federal-question jurisdiction once had an amount-in-controversy requirement as well.  If such a requirement were revived under § 1331, it is beyond peradventure that § 1367(a) provides supplemental jurisdiction over federal-question cases where some, but not all, of the federal-law claims involve a sufficient amount in controversy.

*Id*. at 562.  Thus, the Supreme Court has explicitly addressed the issue before this Court.  That is, some, but not all, of Dr. Blooms' 42 U.S.C. §1395ff(b)(1)(E) claims meet the amount-in-controversy requirement.  Nevertheless, under § 1367(a), this Court has jurisdiction to hear all the claims.

In all cases, like *Exxon*, where supplemental jurisdiction is at issue the first question is: does the Court have original jurisdiction?  *See, e.g.*, 13D Wright & Miller, FEDERAL PRACTICE AND PROCEDURE §3567 (3rd ed):

> It is this helpful to think of two types of claims.  First, the underlying claim that puts the case into federal court, either initially or through removal, is the "jurisdiction invoking" claim.  It must satisfy an independent basis of federal subject matter jurisdiction.  Second, the "supplemental" claim may be heard even though [it] does not satisfy such an independent basis.

*Id*. at 315-16.

In the present case, the Court has a "jurisdiction invoking" claim in the form of M-15-4332, where the amount in controversy is $1,976.  M-15-1505 and M-16-10554 form part of the same case or controversy as M-15-4332.  Thus, simply applying § 1367(a), M-15-1505 and M-16-10554 are "supplemental" to M-15-4332 and the Court has jurisdiction to hear those claims.  That M-15-1505 and M-16-10554 do not meet the amount in controversy requirement by themselves is of no consequence because the "supplemental" claim always lacks an independent basis for jurisdiction (that is why it is "supplemental").

In his earlier papers, Dr. Bloom cited *Pierre v. Planet Automotive, Inc.*, 193 F.Supp.3d 157 (E.D. N.Y. 2016) as an example of a district court using supplemental jurisdiction to hear a federal question claim that would ordinarily be barred for failure to meet the amount-in-controversy requirement. There, the "jurisdiction invoking" claim was based on the Truth in Lending Act. *Id.* at 173 ("The Court has federal question jurisdiction over Plaintiff's TILA claim …"). The plaintiff also asserted a claim under the Magnusson-Moss Consumer Warranty Act which has a $50,000 amount in controversy requirement.[2] Although the plaintiff could not meet that threshold, using supplemental jurisdiction, the court was able to hear that claim. *Id.* at 169-173 (detailed analysis collecting numerous cases). This Court's decision did not address *Pierre*.

While directly rebutted by *Exxon*, the Court's view that each Medicare claim (even those that form part of the same case or controversy) must stand alone for jurisdiction purposes is perhaps most factually analogous to cases alleging carrier liability under the Carmack Amendment (goods lost, stolen, or damaged during shipping). Carmack Amendment claims are subject to a $10,000 amount-in-controversy requirement on *each* receipt or bill of lading.[3] Thus, if multiple shipments are litigated simultaneously, some claims may reach the amount-in-controversy requirement - while others may not. Nevertheless, as a result of supplemental jurisdiction, courts have found jurisdiction to hear both groups of claims. In this scenario, claims that are valued at $10,000 or more are the "jurisdiction invoking" claims that provide a basis for

---

[2] 15 U.S.C. § 2310(d)(3) ("No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection — (3) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit;").

[3] 28 U.S.C. § 1337(a) ("The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies: *Provided, however*, That the district courts shall have original jurisdiction of an action brought under section 11706 or 14706 of title 49, only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs.").

considering the claims valued at less than $10,000 using supplemental jurisdiction.  Cases of this type include:  *Schoenmann Produce Co. v. Burlington Northern & Santa Fe Railway Co.*, 420 F.Supp.2d 757, 764 n. 2 (S.D. Tex. 2006); *Dress Barn, Inc. v. LTA Group, Inc.*, 822 F.Supp. 88, 90 (D. Conn. 1993).All of the cases cited above adopted the analysis and conclusion Dr. Bloom urges here.

This Court's decision cited to *Esmilla v. Cosmopolitan* , Case No. 9-cv-10169, 2011 WL 814007, at *5 (S.D. N.Y. March 3, 2011) (Freeman, J.) (a case founded on diversity).  As quoted by the Court, *Esmilla* states: "Section 1367 does not provide a mechanism for avoiding the jurisdictional limit, and related aggregation rules of, Section 1332."  Decision at 15.  Applying that reasoning, the Court held that, in the Medicare context, "the aggregation rules of the Medicare Act apply" and that supplemental jurisdiction was not available, even when the Court has original jurisdiction over one claim.

Respectfully, the Court's reading of *Esmilla* is not correct.  As an initial matter, the Court's quotation from *Esmilla* is not complete.  What *Esmilla* actually says is:

> **While supplemental jurisdiction as set forth in 28 U.S.C. § 1367, will often allow a Court with original jurisdiction over at least one claim to hear other, related claims,** Section 1367 does not provide a mechanism for avoiding the jurisdictional limit, and related aggregation rules of, Section 1332.

*Id*. at *5 (emphasis added).  The portion in bold was not included in the Court's quote and goes to the heart of the issue.  That is, did the court have original jurisdiction?

In *Esmilla*, the court lacked a "jurisdiction invoking" claim in a diversity action because: 1) none of the plaintiff's claims against a single party met the amount-in-controversy requirement; and 2) none of the plaintiff's proposed claims against a group of defendants, whose liability was common, undivided, or joint, met the amount-in-controversy requirement.  Thus, the "aggregation rules" referred to *Esmilla* were those related to an effort to establish original

jurisdiction, not supplemental jurisdiction.  By contrast, in the present case, it is undisputed that this Court has original jurisdiction over one claim (M-15-4332) and that "aggregation" to establish original jurisdiction is not required.

Second, as noted by the Court in *Esmilla*, § 1367 contains explicit provisions limiting the use of supplemental jurisdiction in diversity cases.  *Id*.  In summary, § 1367(b) bars the use of supplemental jurisdiction in a diversity case if the supplemental claims/defendants would destroy the original basis for jurisdiction.  By contrast, in Dr. Bloom's case, jurisdiction is not founded on diversity.  Accordingly, none of the restrictions of § 1367(b) are applicable.

In short, if § 1367 means anything, it covers cases just like Dr. Bloom's.  This Court's decision overlooked *Exxon*, *Pierre*, etc., was mistaken in its view of *Esmilla* and constitutes clear/manifest error.  Respectfully, the Court should alter/amend the judgment accordingly.

## III.  Medicare Managed Care Manual[4]

In his papers, the Secretary repeatedly asserted that "aggregation" can *only* occur at the administrative law judge ("ALJ") stage.  See Docket #35  at 16-17.  Indeed, the Secretary told this Court: "As the Medicare rules direct, aggregation cannot occur at the judicial review stage." *Id*.

Although the Secretary did not bring it to this Court's attention, Chapter 13, Section 120 of the MEDICARE MANAGED CARE MANUAL is entitled "Judicial Review" and provides:

> Any party, including the Medicare health plan (upon notifying all the other parties), may request judicial review of an ALJ's decision if:
>
> • The MAC adopted, modified, or reversed the ALJ decision; and
>
> • The amount in controversy meets the appropriate threshold.
>
> For *2012*, the AIC threshold required for judicial review is $*1,350.**

---

[4] Although Dr. Bloom had Original Medicare, the basis for judicial review between Original Medicare and Medicare Managed care are based on the same principles.

*\*This amount is calculated annually and published in the Federal Register prior to the end of each calendar year. Thus, revisions will be posted in the manual updates following the annual publication of the AIC.*

**The enrollee may combine claims to meet the amount in controversy requirement.** To meet the requirement:

• All claims must belong to the same enrollee;

• The MAC must have acted on all the claims;

• The enrollee must meet the 60-day filing time limit for all claims; and

• The requests must identify all claims.

A party may not obtain judicial review unless the MAC has acted on the case - either in response to a request for review or on its own motion.

(emphasis added).  It is noted that this section concerns *judicial review* and, again, is directly contrary to the Secretary's arguments before this Court.  As detailed, the section contemplates "combination" *after* the MAC has acted on the underlying claims.  This section is inconsistent with the Secretary's arguments to this Court and with the Court's decision.  However, this section is consistent with Dr. Bloom's course of conduct and position before this Court.

In sum, Medicare claims may be "aggregated"[5] at three levels.  First, multiple claims may be aggregated before an ALJ, typically to meet the amount-in-controversy requirement to obtain a hearing.  Second, multiple ALJ decisions may be combined into a single MAC appeal.  Finally, multiple MAC decisions may be combined in a single District Court action.  Whether such "aggregation" will be necessary depends on how/when the claims are submitted and the applicable amounts-in-controversy.

---

[5] Although "aggregation" is the term used in the statute for activity before the Department, that term is not applicable to proceedings before a District Court in this context.

A simple example may assist the Court.  Consider a party with two denied claims: one for $95 and one for $1,005.[6]  If the claims were submitted simultaneously, then ALJ review would be available for all the claims, without a request for "aggregation", because the total is more than $100.  On the other hand, if each claim were submitted separately, review by an ALJ would not be available for the $95 claim (because it is less than $100), unless a request for "aggregation" with the other claim were made.

Now consider a party with two separate, negative ALJ decisions: one for $995 and one for $1,005.  Review by the Medicare Administrative Contractor ("MAC") of both decisions is available because MAC review has no amount-in-controversy requirement.  Under the rules, the decisions could be the subject of separate MAC appeals.  Alternatively, the party could request "aggregation" to combine the appeals and obtain a single MAC decision.

Now consider judicial review of the MAC decisions.  In the case of a single MAC decision covering both ALJ decisions, the amount-in-controversy requirement for judicial review is met because more than $1,000 is at issue.  On the other hand, if there were two separate MAC decisions, judicial review of an earlier issued $995 decision is dependent on when the MAC decisions issued and whether any extensions to seek judicial review were granted.  If the MAC decisions issued within 60 days of each other and suit was filed within that same 60 day window, then judicial review is available for both decisions without an extension from the Department because the "individual" is seeking judicial review of an amount more than $1,000.  On the other hand, if more than 60 days passes between the decisions and an extension is not granted, judicial review of an earlier issued $995 MAC decision will not be available because suit must be filed within 60 days.  Alternatively, if an extension were granted and suit was filed within 60 days of

---

[6] For simplicity's sake, the effect of consumer price index ("CPI") inflation adjustment is ignored in this example.

the combined MAC decisions, then judicial review would be available. A "request" to combine MAC decisions for judicial review (other than the Complaint itself) is not necessary because that is the effect of FED.R.CIV.P. 18/supplemental jurisdiction.[7]

The various permutations of separate and combined appeals and the amounts-in-controversy result in each part of 42 U.S.C. § 1395ff(b)(1)(E) having meaning - leaving no part "superfluous." Decision at 11. Subsection (ii) would come into play as indicated above: two separate claims were submitted (e.g., separate claims for bandages for $95 each) and denied either before getting to an ALJ or before getting to the MAC. 42 U.S.C. § 1395ff(b)(1)(E)(ii) would allow that party to aggregate those claims either to meet an amount-in-controversy requirement or for simple convenience.

Had the Secretary brought to this Court's attention its own manual sections that explicitly contradict its claims to this Court, this Court's determination would/should have been different.

## CONCLUSION

Respectfully, this Court's decision that it lacks jurisdiction to consider M-15-1505 and M-16-10554 represents clear/manifest legal error. In addition, because the relevant provisions of the MEDICARE MANAGED CARE MANUAL were not brought to the Court's attention by the Secretary, the Court was led astray. Pursuant to FED.R.CIV.P. 52(b) and 59(a)/(e), Dr. Bloom respectfully asks the Court to alter/amend the judgment accordingly.

---

[7] In similar fashion, claims may be litigated in district courts. A party with multiple claims arising from the same nucleus of operative fact may (without seeking permission) file a single case with multiple claims. Alternatively, the same party could file multiple, separate cases in district court. If the party later changed its mind, it could seek permission to consolidate the cases into a single action. While the party would have had the right to combine these cases initially without approval, once submitted, permission is necessary and not "automatic." Decision at 11.

Dated at Burlington, Vermont this 26th day of February, 2018.

**JONATHAN A. BLOOM**

By:     */s/ Debra M. Parrish*
        Debra M. Parrish, Esq. (*pro hac vice*)
        Bridget M. Noonan, Esq. (*pro hac vice*)
        PARRISH LAW OFFICES
        788 Washington Road
        Pittsburgh, PA  15228
        debbie@dparrishlaw.com
        bridget@dparrishlaw.com

By:     */s/ Craig S. Nolan*
        Craig S. Nolan, Esq.
        SHEEHEY FURLONG & BEHM P.C.
        30 Main Street, 6th Floor
        P.O. Box 66
        Burlington, VT  05402-0066
        (802) 864-9891
        cnolan@sheeheyvt.com

11

## CERTIFICATE OF SERVICE

I, Craig S. Nolan, counsel for Jonathan A. Bloom, do hereby certify that on February 26,

2018, I electronically filed with the Clerk of Court the following document:

### MOTION TO ALTER OR AMEND JUDGMENT

using the CM/ECF system.  The CM/ECF system will provide service of such filing via Notice

of Electronic Filing (NEF) to the following NEF parties:

> Melissa A.D. Ronaldo, Esq.
> Assistant United States Attorney
> P.O. Box 570
> Burlington, VT 05401
> (802) 951-6725
> Melissa.Ronaldo@usdoj.gov

Dated at Burlington, Vermont this 26th day of February, 2018.


By:   */s/ Craig S. Nolan*
      Craig S. Nolan, Esq.
      SHEEHEY FURLONG & BEHM P.C.
      30 Main Street, 6th Floor
      P.O. Box 66
      Burlington, VT  05402-0066
      (802) 864-9891
      cnolan@sheeheyvt.com