UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

JONATHAN A. BLOOM,

            Plaintiff,

v.                                                                Civil No. 5:16-cv-121

ALEX AZAR,
Secretary of the U.S. Department of Health
and Social Services,

            Defendant.

## DR. BLOOM'S MOTION FOR FEES AND COSTS

Dr. Bloom respectfully files this motion for an Order compelling the Secretary to reimburse Dr. Bloom his reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA").

This is exactly the kind of case for which an EAJA award is justified. For nearly four years, the Secretary has denied Dr. Bloom's claims on the grounds that a continuous glucose monitor ("CGM") is not "primarily and customarily used for a medical purpose." On its face, that position was and is nonsensical. The Secretary maintained that position although:

    1) more than 40 Medicare Administrative Law Judge ("ALJ") decisions told the Secretary his position was not well founded;

    2) multiple ALJs told the Secretary his position was not well founded with respect to Dr. Bloom specifically;

    3) another District Court described the Secretary's position as "head scratching"; and

    4) yet another District Court found the Secretary's position arbitrary and capricious, and that decision had become final.

Dr. Bloom should never have had to litigate this issue (much less do so 13 times and counting) and Dr. Bloom should be awarded his reasonable attorneys' fees and costs.

## BACKGROUND

### I. Procedural Background

Starting in 2011, Dr. Bloom has been forced to repeatedly litigate the issue of whether a CGM is "primarily and customarily used for a medical purpose." To date, Dr. Bloom has litigated this issue through at least the ALJ stage 13 times.

The present case stems from claims submitted by Dr. Bloom in March, June, and August 2014. These claims were denied although Dr. Bloom had previously received at least four favorable ALJ decisions on exactly this same point. In each case, Dr. Bloom appealed the initial denial through redetermination, reconsideration, hearing before the ALJ, and an appeal to the Medicare Appeals Council ("Council"). In one of the cases at bar, M-15-1505, Dr. Bloom received yet another favorable ALJ decision which the Secretary appealed to the Council. At the Council, all of the claims were denied on the grounds that a CGM is not "primarily and customarily used for a medical purpose."

This case was filed in April 2016. Doc. No. 1. The Secretary then sought remand to better develop the bases for denial. Doc. No. 9. That motion was denied by this Court in January 2017. Doc. No. 20. The Complaint was amended in February 2017 to reflect the later issuance of additional negative Council decisions. Doc. No. 21. In October 2017, the Court in *Whitcomb v. Hargan,* No. 17-CV-14 (E.D., Wis. Oct. 26, 2017), issued a decision finding that the Secretary's denials of CGM coverage on the grounds that the devices were not "primarily and customarily used for a medical purpose" was arbitrary and capricious. The Secretary did not

appeal the *Whitcomb* decision and it became final in early January 2018. Still, the Secretary was not deterred and maintained that position before this Court.

In 2016, the Court in *Finigan v. Burwell,* 189 F.Supp. 3d 201, 207 n.6 (D. Mass. 2016), described the Secretary's position as "head scratching." Still, the Secretary was not deterred and maintained that position before this Court. By 2018, at least 40 ALJs in more than 55 ALJ decisions had found that a CGM qualifies as durable medical equipment ("DME") that is covered by Medicare and rejected the Secretary's position. *See* http://dparrishlaw.com/wp-content/uploads/2017/11/Favorable-ALJs-on-CGM2.pdf. Still, the Secretary was not deterred and maintained that position before this Court.

On January 29, 2018, this Court issued its decision rejecting the Secretary's claim that a CGM is not DME. In its decision, the Court dismissed two of the appealed claims on the grounds that those claims, considered individually, did not meet the amount-in-controversy requirement and, therefore, the Court lacked jurisdiction to consider those claims.[1]

Moreover, *after this Court's decision* that a CGM is DME, the Secretary has continued to deny Dr. Bloom's claims on the same grounds. *See* Exhibit D. Thus, this Court's decision has not deterred the Secretary.

## II.   Legal Background

The Equal Access to Justice Act (EAJA) (28 U.S.C. § 2412(d)(1)(A)) provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the

---

[1] Those dismissals are the subject of Dr. Bloom's co-pending motion to alter or amend the judgment. *See* Doc. No. 52. Further, of course, the Court's dismissal is not reflective of the underlying merits, which have the same basis as the claim the Court found for Dr. Bloom.

3

> court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

"The EAJA was enacted to decrease the chance that 'certain individuals … may be deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights.'" *See, e.g., Green v. Bowen*, 877 F.2d 204, 206 (2nd Cir. 1989). A parallel objective of EAJA is to deter the government from litigating unreasonable positions by forcing the government to bear the cost of the resulting attorneys' fees. *See, e.g., Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991); *Berman v. Schweiker*, 713 F.2d 1290, 1295-6 (7th Cir. 1983).

Under the statute, eligibility for a fee award requires: 1) that the claimant is the "prevailing party"; 2) that the Government's position was not substantially justified; and 3) that no "special circumstances" make a fee award unjust. *See, e.g., Gomez-Beleno v. Holder*, 644 F.3d 139, 144 (2nd Cir. 2011). As defined in the statute, the "position of the United States" includes not only the position advanced in the litigation, but also the acts or omissions by an agency giving rise to the litigation. 28 U.S.C. § 2412(d)(2)(D).

A party is the "prevailing party" if he has been "awarded some relief by the court" that amounts to a court-ordered "change in the legal relationship between the parties." *See Buckhannon Board and Care Home Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 603-4 (2001).

After the movant shows that it was the "prevailing party", the government bears the burden of showing that its position was substantially justified. "Substantially justified" means "justified to a degree that could satisfy a reasonable person." *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988). To make that showing, the government must make a "strong showing" that its position has "a reasonable basis both in law and fact." *Id.* "[T]he Government's prelitigation

4

conduct or its litigation position could be sufficiently unreasonable by itself to render the entire Government position not 'substantially justified.'" *United States v. $19,000 in U.S. Currency*, 95 F.3d 248, 252 (2nd Cir. 1996).

Decisions in other cases, although not dispositive, may also shed light on the lack of justification for the government's position. "[A] string of losses can be indicative." *Pierce*, 487 U.S. at 566.

An EAJA fee petition must include: 1) a showing that the applicant is a prevailing party; 2) a showing that the applicant is eligible to receive an award; 3) an itemized statement containing time expended and rates charged; and 4) an allegation that the position of the United States was not substantially justified. *Scarborough v. Principi*, 541 U.S. 401, 408 (2004).

## DISCUSSION

### I.  GENERAL EAJA SHOWING

Dr. Bloom tracks the requirements of *Scarborough*:

#### A.  Dr. Bloom Is the "Prevailing Party"

In the present case, clearly, Dr. Bloom was the "prevailing party." Although Dr. Bloom has not been successful, so far, on all of his claims, Dr. Bloom prevailed on at least one claim and the Court ordered the Secretary to provide coverage for Dr. Bloom's CGM device. Decision at 25.

#### B.  Dr. Bloom Is Eligible To Receive An EAJA Award

EAJA fee awards are available to private litigants with a net worth not exceeding $2,000,000. 28 U.S.C. § 2412(d)(2)(B)(i). Dr. Bloom is submitting a declaration to verify his status. *See* Bloom Declaration attached as Exhibit A. Dr. Bloom's net worth has never exceeded $2,000,000. Consequently, Dr. Bloom is an individual who is eligible to collect fees and costs under the EAJA.

## C. Itemized Statement

In this litigation, Dr. Bloom was represented by Craig S. Nolan (acting as local counsel) and the Parrish Law Offices (principally, Debra M. Parrish and James Pistorino). Each of these attorneys has over 20 years' experience handling complex litigation matters in federal and state courts. An itemized statement of the time expended, rates charged, and expenses is attached as Exhibit B.

Broken down by firm, the totals are:

| Name | Hours | Fees | Expenses | Total |
|---|---|---|---|---|
| Sheehey Furlong & Behm P.C. | 35.20 | $10,525.00 | $854.65 | $11,379.65 |
| Parrish Law Offices | 163.87 | $77,464.83 | $1,479.00 | $78,944.47 |
| **Total** | **199.07** | **$87,989.83** | **$2,333.65** | **$90,324.12** |

These fees and expenses are the direct result of the Secretary's unreasonable denials necessitating litigation of this matter despite numerous prior decisions against the Secretary and in favor of Dr. Bloom. The fees listed above are based on the attorneys' usual and customary rates.

## D. The Secretary's Position Was Not "Substantially Justified"

At base, all that is needed to decide this issue is the fact that for nearly four years the Secretary denied Dr. Bloom CGM coverage on the grounds that a CGM is not "primarily and customarily used for a medical purpose." That position is so at odds with reality that it is hard to understand how anyone could hold that belief.

As noted above, this Court is not the first to determine that a CGM is DME. At least 40 different Medicare ALJs have issued more than 55 decisions coming to the same conclusion. That is, at least 40 experts in the Department's rules and regulations considered the Secretary's

position, found it lacking, and told the Secretary so more than 55 times. Yet the Secretary persisted in his denials. Further, the Court in the *Whitcomb* case told the Secretary his position was arbitrary and capricious and, again, found that a CGM is DME. This is the very definition of a "string of losses" indicative that a position lacks "substantial justification." *Pierce*, 487 U.S. at 566.

In addition to the ALJs, other units within the Department were telling the Secretary that his position was unreasonable. In April 2016, the Civil Remedies Division of the Department told the Secretary that a CGM is DME, that "precautionary" was an inappropriate limitation to try to graft on the definition of DME, and that the Secretary's denial of CGM coverage failed under the "reasonableness" standard. Still, the Secretary persisted advancing this unreasonable position.[2]

Moreover, because no doctor, study, professional organization, industry party/group, or competent authority of any kind has ever opined that a CGM is not "primarily and customarily used for a medical purpose," the Secretary's position was wholly without factual basis.

Finally, although Dr. Bloom has not been successful (so far) on two of the appealed claims, that is a result of the Court's dismissal on jurisdictional grounds at the Secretary's urging. That is, the Secretary has argued that the Court lacks the power to correct denials that this Court has found were lacking in basis and that another court has found were arbitrary and capricious.

The Secretary cannot meet his burden of making a "strong showing" that his position had substantial justification.

---

[2] The undersigned encourages the Court to consider how it would react to a private litigant behaving similarly.

### E.     There Are No "Special Circumstances"

There are no "special circumstances" that would make an EAJA award unjust.

### F.     A Fee Award Furthers the Purposes of EAJA

As detailed above, the EAJA has two complementary purposes: 1) to prevent the expense of litigation from discouraging parties from challenging unreasonable government action or inaction; and 2) to deter the government from litigating unreasonable positions. Both of those purposes would be served by a fee award in this case.

First, if Dr. Bloom were forced to bear the expense of a multi-year litigation, that would vastly outweigh the amounts at issue ($1,976, $473, and $1,419). Thus, the sheer burden of the litigation would preclude any economically rational actor from challenging the government's unreasonable conduct in this case. Accordingly, an award would be consistent with the very purpose of EAJA.

Second, an award would further the deterrence purpose of EAJA. As detailed above, the Secretary has not been deterred by:

1) at least 40 ALJs telling the Secretary his position was not well founded;

2) multiple ALJs telling the Secretary his position was not well founded with respect to Dr. Bloom, specifically;

3) another District Court describing the Secretary's position as "head scratching";

4) the Secretary's own Civil Remedies Division telling the Secretary his position was not well founded; and

5) yet another District Court finding the Secretary's position arbitrary and capricious, when that decision had become final.

All of that had happened *before* this Court's decision. Incredibly, even this Court's decision with respect to Dr. Bloom's entitlement to CGM coverage has not deterred the Secretary from

continuing to issue the same unreasonable denials *to Dr. Bloom*. *See* Exhibit D. In short, the Secretary is impervious to negative authority and reason.

An EAJA award may serve the purpose of deterring the Secretary from continuing to advance this unreasonable position; that is one purpose of EAJA.

**I.      A Rate Enhancement Is Appropriate**

Pursuant to 28 U.S.C. § 2412(d)(2)(A), attorneys fees in excess of $125/hour may be awarded if the court determines that an increase in the cost of living or some other special factor justifies the higher rate. *See, e.g., Gomez-Beleno*. 644 F.3d at 146-7.

**A.      Cost of Living Adjustment ("COLA")**

The Consumer Price Index ("CPI") is used to calculate the proper cost of living adjustment to the statutory rate. *See, e.g., Harris v. Sullivan*, 968 F.2d 263, 264-5 (2nd Cir. 1992). The CPI-U for the Northeastern Region in January 2018 (262.19) divided by the same for March 1996 when the statutory rate was enacted (162.8) gives a multiplier factor of 1.61. The statutory rate ($125) multiplied by this factor results in an adjusted rate of $201.31.

Applying this factor to the billed hours gives the following:

| Name | Hours | Fees | Paralegal Fees | Expenses | Total |
|---|---|---|---|---|---|
| Sheehey Furlong & Behm P.C. (all attorneys) | 34.5 | $6945.20 | $87.50 (.7 @$125) | $854.65 | $7,887.35 |
|  |  |  |  |  |  |
| Parrish Law Offices (all attorneys) | 163.87 | $32,988.67 |  | $1,479.00 | $34,467.67 |
| **Total** | **199.07** | **$40,074.78** |  | **$2333.65** | **$42,408.43** |

**B.      Special Factor Adjustment**

In addition to the COLA, the EAJA rate may be enhanced using the "special factor" provision in 28 U.S.C. §2412(d)(2)(A)(ii) based on a showing that the case requires "an

9

identifiable practice specialty not easily acquired by reasonably competent attorney." *Sprinkle v. Colvin* at 426, citing *Raines v. Shalala*, 44 F.3d 1355, 1361 (7th Cir. 1995). "We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Pierce v. Underwood*, 487 U.S. at 572.

Ms. Parrish's specialized knowledge and experience was required to competently represent Dr. Bloom (and CGM users more generally). Only someone with a technical/biology background would be able to understand the differences between the various CGM devices, finger sticks and how they work, and diabetic conditions to both put forth Dr. Bloom's arguments/claims and to rebut the Secretary's. In addition, a detailed knowledge of the Medicare appeals process was/is required. Ms. Parrish brought that specialized background and knowledge to bear in successfully representing Dr. Bloom.

One aspect of that specialized knowledge is Ms. Parrish's and the Parrish Law Offices' unique knowledge of the state of CGM litigation before the Department. ALJ decisions are not generally publicly available. Thus, it was only because of the Parrish Law Offices' position that information about the number of ALJs who had ruled that CGMs qualified as DME was available.

Special expertise in Medicare law by attorneys from a Medicare advocacy organization was enough to convince the district court in *Connecticut State Dept. of Social Services v. Thompson*, 289 F.Supp. 198, 204-5 (D.Conn. 2003). The case was reversed on the merits which ended the entitlement to fees so there was no criticism of the expertise issue. *Connecticut State Dept. of Social Services v. Thompson*, 428 F.3d 138 (2nd Cir. 2005). A tax attorney who was a

former IRS Special Agent met the test in *U.S. v. Scheingold*, 293 F.Supp.2d 447, 452 (D.N.J. 2003). Attorney Parrish's background would satisfy both of these courts.

Ms. Parrish customarily charges $490-525 per hour to handle Medicare matters. (*See* Declaration of Debra M. Parrish, attached as Exhibit C). Ms. Parrish is a member of the American Health Lawyers Association, the National Association of College and University Attorneys, the Council of Science Editors, the Society for Research Administrators, and has been handling Medicare appeals of denied claims since 1999.

In addition to Ms. Parrish, Mr. Pistorino of Parrish Law Offices also worked extensively on this matter. Mr. Pistorino has over 20 years' experience litigating matters in federal court and brought that experience to bear, under Ms. Parrish's guidance in drafting much of the pleadings in this case. Mr. Pistorino customarily charges $495/hour for work of this kind and his lower billing rate, with Ms. Parrish's collaboration, allowed this matter to be handled in a more economical manner that it would otherwise have been.

Applying the Parrish Law Offices' usual billing rates and the COLA rates to Mr. Nolan and Ms. Noonan gives the following:

| Name | Hours | Fees | Paralegal Fees | Expenses | Total |
|---|---|---|---|---|---|
| **Sheehey Furlong & Behm P.C.** | **34.5** | **$6945.20** | **$87.50** | **$854.65** | **$7,887.35** |
| *Craig S. Nolan @325* | *16.1* | *$5,232.50* | | | *$5,232.50* |
| *Craig S. Nolan @335* | *9* | *$3,015.00* | | | *$3,015.00* |
| *Craig S. Nolan @350* | *.6* | *$210.00* | | | *$210.00* |
| *Justin A. Brown @225* | *8.8* | *$1,980.00* | | | *$1,980.00* |
| **Parrish Law Offices** | **163.87** | **$74,447.17** | | **$1,479.00** | **$75,926.17** |
| *Debra M. Parrish @$525* | *52.33333* | *$27,475.00* | | | *$27,475.00* |
| *Debra M. Parrish @$500* | *36.75* | *$18,375.00* | | | *$18,375.00* |
| *Debra M. Parrish @$490* | *10.08333* | *$4,940.83* | | | *$4,940.83* |
| *James.Pistorino @$495* | *36.2* | *$17,919.00* | | | *$17,919.00* |
| *Bridget M. Noonan @$201.31* | *28.50001* | *$5737.34* | | | *$5,737.34* |
| **Total** | **199.07** | **$81,533.28** | | **$2,333.65** | **$83,866.93** |

## CONCLUSION

An EAJA award is appropriate in this case. Indeed, an EAJA award may be the most efficient route to stopping the Secretary's repeated expenditure of resources litigating an unreasonable position and thwarting the will of Congress.

Dated at Burlington, Vermont this 1st day of March, 2018.

**JONATHAN A. BLOOM**

By: */s/ Debra M. Parrish*
Debra M. Parrish, Esq. (*pro hac vice*)
Bridget M. Noonan, Esq. (*pro hac vice*)
PARRISH LAW OFFICES
788 Washington Road
Pittsburgh, PA 15228
debbie@dparrishlaw.com
bridget@dparrishlaw.com

By: */s/ Craig S. Nolan*
Craig S. Nolan, Esq.
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, 6th Floor
P.O. Box 66
Burlington, VT 05402-0066
(802) 864-9891
cnolan@sheeheyvt.com

## CERTIFICATE OF SERVICE

I, Craig S. Nolan, counsel for Jonathan A. Bloom, do hereby certify that on March 1, 2018, I electronically filed with the Clerk of Court the following document:

## DR. BLOOM'S MOTION FOR FEES AND COSTS

using the CM/ECF system.  The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

> Melissa A.D. Ronaldo, Esq.
> Assistant United States Attorney
> P.O. Box 570
> Burlington, VT 05401
> (802) 951-6725
> Melissa.Ronaldo@usdoj.gov

Dated at Burlington, Vermont this 1st day of March, 2018.

By: */s/ Craig S. Nolan*
Craig S. Nolan, Esq.
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, 6th Floor
P.O. Box 66
Burlington, VT  05402-0066
(802) 864-9891
cnolan@sheeheyvt.com