UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| JONATHAN A. BLOOM, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>ALEX M. AZAR II, )<br>Secretary, U.S. Department )<br>of Health and Human Services, )<br>    Defendant. ) | Civil No. 5:16-cv-121 |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT

Defendant Alex M. Azar, II, Secretary of the United States Department of Health and Human Services ("the Secretary") respectfully submits the following opposition to Plaintiff's Motion for Fees and Costs. This Court should deny Plaintiff's motion for attorneys' fees and costs totaling over $83,866.93 under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), because the Secretary's decision to litigate this case was substantially justified.

In its January 29, 2018 decision (ECF Document ("Doc.") No. 50) ("Decision"), the Court disagreed with the Secretary's final decision in M-15-4332, which denied coverage for disposable sensors and a transmitter for Plaintiff's continuous glucose monitoring ("CGM") system. In particular, the Court did not agree with the Secretary's interpretation that Plaintiff's requested CGM and supplies did not fit within the Medicare benefit category for durable medical equipment ("DME").[1] However, such a finding does not automatically entitle Plaintiff to attorneys' fees and costs under EAJA. In reaching his decision that Plaintiff's CGM was not

---

[1] The Court did, however, agree with the Secretary's argument that Plaintiff could not belatedly aggregate the claims at issue in M-15-1505 and M-16-10554 to meet the amount in controversy required for judicial review of Medicare claims. Plaintiff has challenged the Court's determination on this issue in a motion to alter or amend, which the Secretary has also opposed.

1

covered by Medicare because it is not "primarily and customarily used to serve a medical purpose", the Secretary reasonably relied on the statutory language that items and services must be eligible for coverage under a defined benefit category and must be reasonable and necessary for the diagnosis or treatment of an injury or illness. 42 C.F.R. § 414.202. The Secretary was further reasonable in his reliance on the guidance provided in the *Medicare Benefit Policy Manual* and in binding National Coverage Determinations, as well as the evidence in the record confirming that Plaintiff's CGM system is unreliable and should not be relied upon in making diabetes treatment decisions. In light of the Secretary's substantially justified position, Plaintiff is not entitled to a fee award under EAJA.

## I.   BACKGROUND

Plaintiff is a Medicare beneficiary with type 1 diabetes and a history of hypoglycemia. Administrative Record ("A.R.")[2] 377, 380-81. Plaintiff has used a CGM system since at least 2006, prior to his enrolling in the Medicare program in 2009. Plaintiff uses a Medtronic MiniMed CGM system but still must monitor his blood glucose level via traditional fingerstick monitoring even while using the CGM. *Id.* at 380-381, 385. The details concerning Plaintiff's disease and use of his CGM, as well as the procedural history of Plaintiff's claims before the Agency, were extensively discussed by the Secretary in his previously filed briefs, familiarity therewith is presumed, and those facts will not be repeated here. *See* ECF Doc. Nos. 35, 38, 40.

After briefing and oral argument, this Court issued a decision, which granted the Secretary's motion to affirm the Council's decision in part and reversed in part. The Court agreed with the Secretary's procedural arguments, including that Plaintiff could not belatedly

---

[2] The references to the administrative record herein refer only to the administrative record for Council Decision No. M-15-4332.

aggregate the claims at issue in his other Council decisions to meet the amount in controversy. Decision at 9-15.

In reviewing the parties' substantive arguments, the Court ruled that the Council erred in relying on LCD L11530 and Policy Article A33614. *Id.* at 19.[3] The Court explained that the term "precautionary," which appears in the MBPM, is not controlling. Instead, the regulatory language itself controls: that is, "whether the equipment is 'primarily and customarily used to serve a medical purpose.'" 42 C.F.R. § 414.202; Decision at 19. Here, because "[n]o record evidence suggests that CGMs are used for any nonmedical purpose" and "[t]he Secretary has not stated what nonmedical purpose a CGM might serve," the Court concluded that the Council's decision was not supported by substantial evidence. *Id.* The Court also dismissed the Council's determination that the regulatory criteria "has . . . to do with whether the equipment is the 'primary' equipment used to serve that purpose." *Id.* at 20. While "precautionary" is used in the MBPM, its use there refers to "backup or emergency equipment," whereas Plaintiff "uses [his CGM] to avoid hypoglycemia." *Id.* at 21. The Court therefore applied a plain language reading of 42 C.F.R. § 414.202, to find that Plaintiff's CGM qualified as DME. *Id.* at 20-22.

Having prevailed before this Court, Plaintiff filed an application for fees under EAJA.

## II.     ARGUMENT

### A.  A Prevailing Party Is Not Automatically Entitled to Fees under EAJA.

The EAJA is not an automatic fee shifting statute. *See Commissioner, I.N.S. v. Jean,* 496 U.S. 154, 155 (1990); *Federal Election Comm'n v. Rose*, 806 F.2d 1081, 1087 (D.C. Cir. 1986); The EAJA provides for an award of attorney fees and other expenses to a party who prevails in litigation against the United States if: (1) he was a "prevailing party"; (2) the government's

---

[3] This was the error identified by the Secretary that formed the basis of the Secretary's motion to remand pursuant to Sentence 6 of Section 405(g).

position was not "substantially justified"; (3) there exist no special circumstances that would make an award unjust; and (4) he filed a timely application. 28 U.S.C. §§ 2412(d)(1)(A),(B).

In the present case, the parties agree that Plaintiff is, in part, a prevailing party, that he timely filed his application and that no special circumstances exist that would make an award unjust 28 U.S.C. § 2412(d)(1)(A). The primary issue is whether the Secretary's position that the Court rejected was substantially justified.

The Secretary bears the burden of showing that his position was substantially justified. *Rosado v. Bowen*, 823 F.2d 40, 42 (2d Cir. 1987). Although the phrase "substantially justified" is not defined in the EAJA, the Supreme Court has explained that the government's position is substantially justified if it is "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). In offering further guidance regarding the substantially justified standard, the Supreme Court stated:

> [A] position can be substantially justified even though it is not correct, and we believe that it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.

*Id.* at 566 n.2. Thus, substantially justified does not mean "'justified to a high degree,'" but rather, is satisfied "if there is a 'genuine dispute,' or 'if reasonable people could differ as to [the appropriateness of the contested action].'" *Id.* at 565 (alteration in original) (citations omitted). Furthermore, a loss on the merits does not equate with a lack of substantial justification. *See Pierce*, 487 U.S. at 569 ("[O]bviously, the fact that one agreed or disagreed with the Government does not establish whether its position was substantially justified. Conceivably, the agency could take a position that is not substantially justified, yet win; *even more likely, it could take a position that is substantially justified, yet lose*." (emphasis added)).

Significantly, the substantial justification standard is distinct from the substantial evidence standard, which governs review of the Secretary's final decision. As the Second

4

Circuit has observed, "[a] merits decision and fees decision are governed by different standards," and "there is no congruence between the 'substantial evidence' standard and the 'substantially justified' standard." *Miles ex rel. J.M. v. Astrue*, 502 Fed. App'x 59, 60 (2d Cir. 2012) (citing *Sotelo-Aquije v. Slattery*, 62 F.3d, 54, 58 (2d Cir. 1995)) (internal quotation marks omitted). At the EAJA stage, the distinct issue is "whether the agency had a reasonable basis in fact or law to take the position that it did, at the time it made its decision." *Sotelo-Aquije*, 62 F.3d at 58. *See also Kolman v. Shalala*, 39 F.3d 173, 177 (7th Cir. 1994) (explaining that at the EAJA stage, the test is "whether the agency had a rational ground for thinking it had a rational ground for its action"). Therefore, a court's statement in its merits decision that the government's determination was not supported by substantial evidence does not imply a lack of substantial justification for the agency's position. *Cohen v. Bowen*, 837 F.2d 582, 585-86 (2d Cir. 1988) ("[The District Court] noted that since a social security appeal usually will be reversed only if the court finds the Secretary's position to lack substantial evidence, the practical effect of viewing 'substantial evidence' and 'substantially justified' as synonymous would be that attorney fee awards would become automatic in virtually all successful social security appeals. This would be contrary to the clearly expressed intent of Congress that fees under the EAJA not be awarded automatically whenever the plaintiff prevails against the Government."). In sum, this Court should deny the application for EAJA fees as long as the Secretary reasonably argued this case. *See Pierce*, 487 U.S. at 565.

### B.  The Secretary's Position Regarding CGMs Was Substantially Justified.

When considering whether to award attorney's fees under EAJA, the court determines whether the government's position during the administrative and litigation phases was substantially justified. 28 U.S.C. § 2412(d)(2)(D). However, the court need only make one determination as to whether the government's position as a whole was substantially justified

5

during the entire civil action. *Jean*, 496 U.S. 154, 159 (1990). In this case, the Secretary's position throughout the administrative proceedings and the litigation before this Court was substantially justified.

During the administrative proceedings underlying the final decision in M-15-4332 and before this Court, the key issue was whether Plaintiff's CGM qualified as DME under 42 C.F.R. § 414.202—and more specifically, whether Plaintiff's CGM "is primarily and customarily used to serve a medical purpose." 42 C.F.R. § 414.202(3). The Secretary's position that Plaintiff's CGM was not "primarily and customarily used to serve a medical purpose," while ultimately unsuccessful, was substantially justified.

As a starting point, it is important to recall that in order for any item or service to be covered by Medicare, the item or service must fit within a defined Medicare benefit category, as well as be reasonable and necessary for the diagnosis or treatment of an injury or illness. To fit within the Medicare benefit category for DME, the Secretary requires the requested item to be "primarily and customarily used to serve a medical purpose." 42 C.F.R. § 414.202(3). As the Secretary contended throughout the proceedings in this matter, Plaintiff's CGM does not primarily or customarily serve the medical purpose of controlling his diabetes; Plaintiff's CGM also does not treat his diabetes. Indeed, the undisputed evidence in the administrative record established that Plaintiff's CGM should not be relied upon the make treatment decisions. The manufacturer's instructions for the Medtronic MiniMed warns individuals that their treatment regimens should not be altered solely on the basis of the CGM's reading—a characteristic Plaintiff confirmed in his hearing testimony. A.R. 10-11, 385. Thus, the Secretary's argument that Medicare coverage was unavailable for the requested CGM was directly related to the statutory and regulatory language guiding all coverage decisions generally, and all coverage decisions regarding DME.

More specifically, the Secretary's position that the requested CGM does not "serve[] a medical purpose" was substantially justified, even if it was ultimately unsuccessful, because the Secretary's position was "justified to a degree that could satisfy a reasonable person." *See Pierce*, 487 U.S. at 565.).  Although this Court found that the Secretary erred in relying on LCD L11530, Policy Article A33614, and the guidance contained in the MBPM , the Secretary's reliance on those documents was not unreasonable.  With regard to the LCD and Policy Article, the Secretary makes coverage determinations using different methods.  The Secretary is entitled to make coverage decisions on a case-by-cases basis, or through NCDs that set forth national policy regarding the coverage of specific items or services.  42 U.S.C. § 1395ff(f)(1)(b); 42 C.F.R. § 405.1062(a).  Coverage decisions can also be rendered based on LCDs, which apply within certain geographic areas.  42 U.S.C. § 1395ff(f)(2)(B).  As detailed in the Secretary's filings, LCDs were created to replace Local Medical Review Policies ("LMRPs").  *See* ECF Doc. No. 9, at 5-6.  Unlike LMRPs, LCDs contain only information regarding whether an item or service is reasonable and necessary.  As a result, Medicare contractors now develop policy articles that include benefit category determinations, information that was previously contained in an LMRP.  Along with the MBPM, such guidance, which interprets the Medicare statute and regulations, is entitled to a level of deference.  *See Estate of Landers v. Leavitt*, 545 F.3d 98, 106-108 (2d Cir. 2008) (noting "[t]he Supreme Court's repeated suggestion that HHS interpretations, in particular, should receive more respect than the mine-run of agency interpretations"); *Cmty. Health Ctr. v. Wilson-Coker*, 311 F.3d 132, 138 (2d Cir. 2002) (stating that "even relatively informal [CMS] interpretations . . . 'warrant[] respectful consideration' due to the complexity of the statute and the considerable expertise of the administering agency'" (citations omitted)); *see also Thomas Jefferson Univ v. Shalala*, 512 U.S. 504, 511 ("We must give substantial deference to an agency's interpretation of its own regulations.").  Thus, the

Secretary reasonably relied on LCD L11530 and Policy Article A33614 because these documents include information regarding whether Plaintiff's CGM satisfied statutory and regulatory criteria for DME.

The Secretary likewise acted reasonably when relying on the MBPM in determining that Plaintiff's CGM is not primarily and customarily used to serve a medical purpose. Neither the Medicare statute nor the Secretary's implementing regulations define the parameters of what it means "to primarily and customarily serve a medical purpose" leaving the Secretary in the best position to define these parameters.[4] Consequently, in defining the parameters of what it means to primarily and customarily serve a medical purpose, it was entirely reasonable for the Secretary to look to the MBPM for guidance. This is so because the MBPM is issued by CMS, the agency responsible for administering the Medicare program. *See Cmty. Health Ctr.*, 311 F.3d at 138 (explaining that "some significant measure of deference to CMS's interpretation" is warranted, given the "large and complex regulatory scheme" the agency overseesThe Secretary therefore reasonably relied on CMS' guidance regarding the type of equipment that is considered to primarily and customarily serve a medical purpose, which states that "first-aid or precautionary-type equipment (such as present portable oxygen units) . . . are considered non-medical in nature" and, therefore, "are not considered covered DME." MBPM, Ch. 15, § 110.1-B-2. In light of this guidance, containing the "informed judgments" of those most familiar with the Medicare program, it was not unreasonable for the Secretary to conclude that the requested CGM

---

[4] The Secretary is in the best position to define the parameters of coverage because of his technical expertise, and because he has an obligation to preserve the limited resources of the Medicare Trust Fund. Indeed, the Secretary must make difficult decisions when it comes to coverage issues because Congress did not intend for Medicare to cover every item or service that a beneficiary requests. *See generally Heckler v. Campbell*, 461 U.S. 458, 466 (1983) ("Congress has 'conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the [Social Security] Act.'" (citation omitted)).

was similarly "precautionary," and therefore non-medical in nature. *Cmty. Health Ctr.*, 311 F.3d at 138.

As explained above, the undisputed evidence established that Plaintiff's CGM cannot be relied upon to make diabetes treatment decisions. Plaintiff must take an additional action in order to treat his diabetes, thereby rendering his CGM a precautionary device that does not primarily or customarily serve the purpose of controlling or treating Plaintiff's diabetes. While the Secretary accepts that this Court disagreed with his position, the Court's decision does not necessarily mean that the Secretary was not substantially justified in so arguing.

Further, the consistency of the Secretary's argument throughout the administrative proceedings and before this Court highlights his prudent and reasonable approach. Additionally, the Secretary's decision to cover therapeutic CGMs confirms the Secretary's consistent position. *See* Decision at 22 n.8.[5] The reason coverage exists for such CGMs is because they may be relied upon to make treatment decisions without the need to confirm the CGM's reading via fingerstick, thus eliminating the Secretary's articulated concerns regarding the type of CGM utilized and relied upon by Plaintiff.[6]

Finally, the unrelated administrative proceedings and the decisions of courts in other jurisdictions do not undermine the substantial justification of the Secretary's position. Plaintiff argues that this Court should find the Secretary's position unreasonable in light of other ALJ decisions and the Eastern District of Wisconsin's decision in *Whitcomb v. Hargan*, Case No. 17-cv-14 (E.D. Wisc. Oct. 26, 2017) ("*Whitcomb II*"). Pl.'s Mot. at 6-7. However, "other non-

---

[5] As the Secretary has explained, CMS Ruling No. 1682-R provides coverage for "therapeutic" CGMs. ECF Doc. No. 35 at 8 n.10.
[6] *See, e.g.,* ECF Doc. No. 35, at 23-25 (discussing CGM safety concerns); ECF Doc. No. 44 at 2 (noting similar concerns, as well as the general requirement in NCD 280.1 that DME coverage decisions must take into account whether the item is approved by the FDA and considered safe and effective for its intended purpose).

precedential decisions of . . . ALJs . . . [do not] suggest that the Secretary's position . . . was not substantially justified."[7] *Whitcomb v. Burwell*, No. 13-CV-990, 2015 WL 5254518, at *3 (E.D. Wisc. Sept. 9, 2015). *See also* 42 C.F.R. § 405.1062(b) (noting the non-precedential effect of decisions that decline to follow an applicable policy).

Similarly, the non-binding decision of another district court does not render the Secretary's position not substantially justified. The Supreme Court recognized this, stating:

> [o]bviously, the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified. Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose.

*Pierce*, 487 U.S. at 568. And while "a string of losses can be indicative" of a position that is not substantially justified, that is not the situation here, as only one other final adverse district court decision (*Whitcomb II*) has been rendered on the merits. *Id.* Thus, there is no merit to Plaintiff's argument that other decisions render the Secretary's position in this case not substantially justified.

The Secretary's position was substantially justified even if it was rejected by this Court. Therefore, the Secretary respectfully requests that this Court deny Plaintiff's request for nearly $90,000 in fees and costs.[8] Because the Secretary's arguments regarding CGMs were substantially justified, each party should be required to bear its own fees and costs.

---

[7] Moreover, there are many administrative decisions that are consistent with the Secretary's position in this case, including the ALJ decisions at issue in M-15-4332. *See also In the case of J.M.,* Council Docket No. M-13-761, 2013 WL 7965732 (Mar. 29, 2013); *In the case of J.S.,* Council Docket No. M-11-1598, 2011 WL 6968051 (Aug. 3, 2011); *In the case of K.M.*, Council Docket No. M-10-1481, 2010 WL 4877156 (Oct. 29, 2010).

[8] Plaintiff further argues that "after this Court's [January 29, 2018] decision . . . , the Secretary has continued to deny [Plaintiff's] claims on the same grounds." Pl.'s Mot. at 3. However, this allegation is not accurate. The documents presented by Plaintiff establish that the denial relates to CGM supplies dated <u>prior</u> to the Court's decision in this case. Consequently, Plaintiff's faulting of the Secretary for allegedly continuing to deny claims is misplaced. Moreover, it is unclear from the evidence presented that Plaintiff's request for a $7,899 external infusion pump is related to the coverage requests decided by this Court. *See* Pl.'s Mot., Ex. D at 3. Should Plaintiff continue to encounter difficulty regarding the processing of his CGM claims, he need only reach out to the Secretary's Counsel to discuss that matter.

### C.  Plaintiff's Attorneys, Particularly Attorneys Parrish and Pistorino, Are Not Entitled to a Fee Enhancement.

In the event this Court finds that the Secretary's position was not substantially justified, the Secretary urges this Court to hold that Plaintiff's request for nearly $90,000 in enhanced fees and costs is excessive.  The EAJA provides that the amount of attorney's fees awarded:

> [S]hall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living [since 1996, when the current version of the EAJA was passed] or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A)(ii).

While EAJA clearly sets the hourly rate for an attorney to be $125, the Secretary does not dispute the appropriateness of adjusting that amount to take into account a cost of living adjustment.  Thus, if an award of fees is granted, the Secretary accepts Plaintiff's calculation of the hourly rates as adjusted by the Consumer Price Index ("CPI"), or $201.31 per hour.  *See* Pl.'s Mot. at 9.

However, the Secretary disputes that a special factor enhancement should be applied for the work performed by Attorney Parrish and Attorney Pistorino.  Enhanced billing rates have also been applied in Plaintiff's request to the work of local counsel, Attorneys Nolan and Brown, without any justification for the fee enhancement. Pl.'s Mot. at 10-12.  As the Supreme Court stated in *Pierce*, the EAJA "is not designed to reimburse reasonable fees without limit." *Pierce*, 487 U.S. at 573.  Although the statute specifically sets a $125 cap on the hourly rate, adjustments can be made for cost of living or if a special factor is present.  In *Pierce*, the Supreme Court found that an upward adjustment based on a special factor is only available if the availability of qualified attorneys is limited and if the nature of the case makes it necessary to retain the

11

services of attorneys qualified in "some specialized sense, rather than just in their legal competence." *Id.* at 572. The Court stated:

> We think [the special factor] refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawerly knowledge and ability useful in all litigation.

*Id.* The Second Circuit has explained that "a case requires 'specialized expertise' within the meaning of the EAJA only when it requires some knowledge or skill that cannot be obtained by a competent practicing attorney through routine research or legal experience." *Healey v. Leavitt*, 485 F.3d 63, 70 (2d Cir. 2007). With regard to Medicare disputes in particular, the Second Circuit has rejected that "experience[] in the practice of Medicare law" means an attorney "possesses '*distinctive* knowledge or *specialized* skill *needful* for the litigation in question.'" *Id.* (citing *Pierce*, 487 U.S. at 572) (emphasis in original). The Second Circuit further explained:

> While one cannot deny the complexity of the Medicare statute and the regulations promulgated thereunder, this regulatory scheme is no more complex than countless other federal regulatory schemes, and attaining proficiency in these areas is "not beyond the grasp of a competent practicing attorney with access to a law library and other accoutrements of modern legal practice."

*Id.* (citations omitted).

Here, Attorney Parrish argues that she is entitled to an upward adjustment in her fees because of her scientific background, her previous experience working for the Department of Health and Human Services, and her law firm's experience working on other CGM cases. Pl.'s Mot. at 10. According to Attorney Parrish, these characteristics uniquely qualified her (and her law firm) to understand the present litigation and the complexities of devices used for diabetes care. Although the Secretary acknowledges Attorney Parrish's accomplishments, they do not support the significant upward adjustment she seeks.

12

Attorney Parrish claims that "[o]nly someone with a technical/biology background would be able to understand the differences between the various CGM devices, finger sticks and how they work, and diabetic conditions to both put forth Dr. Bloom's arguments/claims and to rebut the Secretary's." Pl.'s Mot. at 10. Contrary to this assertion, however, the present case does not require that an attorney have any specific scientific expertise. The issue was not whether a CGM should be approved for public use, but whether a specific CGM (that has already been approved by the FDA for certain indications) should be covered by Medicare under the DME benefit. Even without a scientific background, it is easy to understand that a CGM operates by continually measuring the glucose levels in the tissue fluid just below a person's skin; and that when the person's glucose level falls outside a predetermined level, an alarm sounds to alert the person that a fingerstick test should be performed. As the present case did not delve deeper into the inner-workings of a CGM, Attorney Parrish's scientific background was not necessary to her providing effective counsel on behalf of Plaintiff.

In other words, an attorney with an understanding of administrative and federal court litigation would likely have been able to adequately represent Plaintiff regardless of possessing specific scientific knowledge and regardless of having experience with litigating similar cases. *Accord Healey*, 485 F.3d at 69-70 ("This case, although certainly challenging, is typical of most litigation brought under modern administrative statutes."). Attorney Pistorino also should not be entitled to a fee enhancement, given that his only addition to the case was "20 years' experience litigating matters in federal court." Pl.'s Mot. at 11. As the Supreme Court stated in *Pierce*, an enhancement is not justified for simply "an extraordinary level of the general lawerly knowledge and ability useful in all litigation." *Pierce*, 487 U.S. at 572. For similar reasons, it does not

appear that the contributions of Attorney Nolan and Attorney Brown were of the type that would justify a fee enhancement in this matter.[9]  *See* Pl.'s Mot., Ex. B at 2-5.

The Secretary also notes that certain of the costs detailed in Attorney Parrish's billing records do not appear directly related to this particular case.  Specifically, Plaintiff's apparent administrative appeal before ALJ Chin was not part of any of the three Council decisions at issue in this case.  *See* Pl.'s Mot., Ex. B at 8-10.  To the extent that Plaintiff is awarded any attorney fees and costs, Plaintiff's counsel should be directed to revise their requests to remove any amounts not directly involved in the litigation of this case.

Additionally, it is unclear from Plaintiff's billing records whether his attorneys include fees and costs associated with the jurisdictional arguments on which Plaintiff was not a prevailing party.  Should the Court determine that any fee award is appropriate, Plaintiff's counsel should be directed to provide itemized billing records that clearly claim fees and costs only on the issue that Plaintiff prevailed.[10]

If an award of fees is granted, the Secretary urges this Court to deny the application of a special factor enhancement to the hourly rate charged by Plaintiff's attorneys.  This case involved a straightforward review of the Secretary's final decision denying coverage for a CGM.  No scientific knowledge or otherwise specialized skills were required to adequately represent Plaintiff.  Accordingly, Attorney Parrish's request for an enhanced fee should be denied.

---

[9] The Secretary does not directly challenge Plaintiff's use of out-of-state counsel in this matter, but does note that the State of Vermont has a number of legal organizations that specialize in Medicare disputes.  *See* Vermont Chapter of the National Academy of Elder Law Attorneys, http://vtnaela.com/; Vermont Legal Aid Elder Law Project, https://www.vtlegalaid.org/elder-law-project; Vermont Legal Aid Health Care Advocate Project, https://www.vtlegalaid.org/health-care-advocate-project.

[10] The Secretary recognizes that this further itemization of billing records may need to await the Court's ruling on the Plaintiff post-judgment motion to amend the judgment on this point.

### III.     CONCLUSION

The Secretary's position throughout the administrative proceedings and before this Court has been substantially justified.  While this Court disagreed with the Secretary's position on CGM systems, that disagreement does not automatically require a fee award under the EAJA.  However, if the Court finds the Secretary's position was not substantially justified, the Secretary urges this Court to deny the request for an enhanced fee and award only reasonable fees and costs, limited to work in this case on the issue on which the Plaintiff prevailed, based on the rate set forth in the EAJA, with an adjustment for cost of living.

Respectfully Submitted,

CHRISTINA E. NOLAN
United States Attorney

By:     /s/ *Melissa A. D. Ranaldo*
MELISSA A.D. RANALDO
Assistant United States Attorney
P.O. Box 570
Burlington, VT  05402-0570
802-951-6725
melissa.ranaldo@usdoj.gov

Of Counsel:

ROBERT P. CHARROW
General Counsel

JAN B. BROWN
Acting Chief Counsel, Region I

JILL L. STEINBERG
Assistant Regional Counsel
Department of Health and Human Services
J.F.K. Bldg., Rm. 2250
Boston, MA  02203
(617) 565-2381

15