UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 MAY 15 AM 11: 26

CLERK

BY

DEPUTY CLERK

JONATHAN A. BLOOM,              )
                               )
        Plaintiff,             )
                               )
    v.                         )       Case No. 5:16-cv-121
                               )
ALEX M. AZAR, II, Secretary, United  )
States Department of Health and Human  )
Services,                      )
                               )
        Defendant.             )

## ORDER ON MOTION TO ALTER OR AMEND JUDGMENT
### (Doc. 52)

In an Opinion and Order dated January 29, 2018, the court granted in part and denied in
part the parties' competing motions concerning review of three decisions by the Medicare
Appeals Council ("MAC") denying Plaintiff Dr. Jonathan A. Bloom's requests for Medicare
payment of claims relating to a continuous glucose monitor ("CGM"). (Doc. 50.) As to one of
those three MAC decisions, the court reversed and remanded with instructions to authorize
coverage for the CGM items at issue. (*Id.* at 25.) The court concluded that it lacked jurisdiction
to review the other two MAC decisions because the amount in controversy was not met. (*See id.*
at 9–15.) Judgment was entered accordingly on January 30, 2018. (Doc. 51.)

Currently pending is Dr. Bloom's Motion to Alter or Amend Judgment, filed on
February 26, 2018. (Doc. 52.) He contends that the court's decision to dismiss the two MAC
decisions for lack of jurisdiction was clearly or manifestly erroneous. (Doc. 52 at 1.) The
Secretary opposes the motion. (Doc. 56.) Dr. Bloom has filed a reply. (Doc. 57.) The court
appreciates the parties' careful attention to this jurisdictional question.

## Background

The court briefly reviews here the facts relevant to the jurisdictional question. This case is an action under 42 U.S.C. §§ 405(g) and 1395ff(b)(1)(A) seeking judicial review of the following three unfavorable MAC decisions relating to coverage under Medicare Part B for Dr. Bloom's CGM (amount in controversy for each claim listed in parenthesis):

1.    November 13, 2015 MAC decision in No. M-15-1505        ($473)

2.    February 24, 2016 MAC decision in No. M-15-4332        ($1,976)

3.    January 27, 2017 MAC decision in No. M-16-10554        ($1,419).

(*See* Doc. 50 at 6–8, 10.) As the court previously noted, a MAC decision on coverage under Medicare Part B is subject to judicial review if the amount in controversy is at least $1,000, adjusted for inflation. *See* 42 U.S.C. § 1395ff(b)(1)(E)(i), (iii); 42 C.F.R. § 405.1006(c). The inflation-adjusted amounts in controversy for judicial review for calendar years 2015, 2016, and 2017 were $1,460, $1,500, and $1,560, respectively. *Medicare Program; Medicare Appeals; Adjustment to the Amount in Controversy Threshold Amounts for Calendar Year 2017*, 81 Fed. Reg. 65,651-03, 2016 WL 5235087 (Sept. 23, 2016) (table lists threshold amounts).

It is undisputed that the amounts in controversy in the 2015 and 2017 MAC decisions fall below those thresholds for judicial review. (*See* Doc. 50 at 10.) The law provides for aggregation of claims at the administrative level, *see* 42 U.S.C. § 1395ff(b)(1)(E)(ii); 42 C.F.R. § 405.1006(e), and Dr. Bloom previously argued that he had requested and received such aggregation. But the court rejected that assertion in its January 29, 2018 Opinion and Order (*see* Doc. 50 at 13–14), and Dr. Bloom does not challenge that determination in his Motion to Alter or Amend. Instead, he argues that (1) under 28 U.S.C. § 1367 and *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005), the court has supplemental jurisdiction to consider

2

the 2015 and 2017 MAC decisions, and (2) a provision of the Medicare Managed Care Manual

states that multiple MAC decisions may be combined in a single action in federal court.

## Analysis

### I.    Applicable Legal Standards

Dr. Bloom brings his motion under Rules "52(b) and 59(a)/(e)" of the Federal Rules of

Civil Procedure.  (Doc. 52 at 2.)  Because there was no trial in this case, the court believes that

Rules 52(b) are 59(a) are likely inapplicable,[1] and proceeds to discuss and apply the standard

under Rule 59(e).  In any case, the standards under Rules 52(b) and 59(e) are similar.  *Panton v.

United States*, No. 98 Cv. 1881(LAP), 2010 WL 5422293, at *2 (S.D.N.Y. Dec. 23, 2010).  One

basis for a Rule 59(e) motion is to correct "manifest error of fact or law."  *Montanio v. Keurig

Green Mountain, Inc.*, 276 F. Supp. 3d 212, 216 (D. Vt. 2017); *see also Schwartz v. Liberty Mut.

Ins. Co.*, 539 F.3d 135, 153 (2d Cir. 2008) (Rule 59(e) is available to correct a clear error of law

or prevent manifest injustice).

### II.    Supplemental Jurisdiction—28 U.S.C. § 1367

It is undisputed that Dr. Bloom's claim challenging the 2016 MAC decision meets the

amount in controversy for judicial review.  Characterizing that as a "jurisdiction invoking"

claim, Dr. Bloom argues that the court has jurisdiction under 28 U.S.C. § 1367(a) to review the

claims challenging the 2015 and 2017 MAC decisions.  (Doc. 52 at 4.)  Section 1367(a) provides

as follows:

---

[1] Regarding Rule 52(b), *see Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1237
(10th Cir. 2007) (Rule 52(b) "applies only to cases in which a district court issues factual
findings following a trial on the merits."); *see also Beck Chevrolet Co. v. Gen. Motors LLC*,
No. 11 Civ. 2856 (AKH), 2012 WL 12925023, at *2 (S.D.N.Y. Aug. 23, 2012) (Rule 52(b) is not
available to seek reconsideration of a decision not involving fact-finding).  Regarding
Rule 59(a), *see United States v. Lloyds TSB Bank PLC*, 639 F. Supp. 2d 326, 328 (S.D.N.Y.
2009) ("Rules 59(a)–(d) by their terms apply only to cases that have been tried . . . .").

3

> Except as provided in subsections (b) and (c) or as *expressly provided otherwise by Federal statute*, in any civil action of which the district courts have *original jurisdiction*, the district courts shall have supplemental jurisdiction over *all other claims* that are *so related* to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a) (emphasis added). The court discusses the parties' arguments using the emphasized phrases in § 1367(a) as a general framework.

## A.   "So Related"

The Secretary has not argued that Dr. Bloom's claims challenging the 2015 and 2017 MAC decision do not form part of the same case or controversy as his claim challenging the 2016 MAC decision. Indeed, all three decisions involve the same issues regarding the requirements for coverage of Dr. Bloom's continuous glucose monitor.

## B.   "Original Jurisdiction"

Previously in this case, the Secretary had argued that § 1367(a) does not apply because the court lacks original jurisdiction. (Doc. 40 at 3.) The court rejected the suggestion that it lacks original jurisdiction, reasoning that jurisdiction derives from the Medicare Act. (Doc. 50 at 14–15.) The court continues to hold that it has original jurisdiction in this civil action. As noted above, it is undisputed that Dr. Bloom's claim challenging the 2016 MAC decision meets the amount in controversy for judicial review. The court has jurisdiction to review that decision under 42 U.S.C. §§ 405(g) and 1395ff(b)(1). The presence of jurisdiction over that claim gives the court original jurisdiction over the "civil action" within the meaning of § 1367(a). *Exxon*, 545 U.S. at 559. Since the court has original jurisdiction over the civil action, "it can turn to the question whether it has a constitutional and statutory basis for exercising supplemental jurisdiction over the other claims in the action." *Id.*

4

### C.   "All Other Claims" Includes Federal Claims

Citing *ABC Home Health Services, Inc. v. Aetna Life Insurance Company*, 878 F. Supp.
1574 (S.D. Ga. 1995), the Secretary suggests that supplemental jurisdiction cannot be used to
support a jurisdictionally inadequate federal claim. *See id.* at 1580 ("The Court is unaware of
any instance in which supplemental jurisdiction has been used to support a jurisdictionally
inadequate federal claim.")   Once a case is properly in federal court, supplemental jurisdiction is
indeed almost always invoked for the court to adjudicate *non-federal* claims. *See Smylis v. City
of New York*, 983 F. Supp. 478, 483 (S.D.N.Y. 1997) (reading "all other" claims in § 1367 to
mean "non-federal" claims).   One prominent authority states that supplemental claims "are
governed by state substantive law," without discussing the possibility that supplemental
jurisdiction might apply to federal claims.   13D Charles Alan Wright et al., Federal Practice &
Procedure: Jurisdiction and Related Matters § 3567.1 (3d ed. updated Apr. 2017).

But the text of § 1367(a) itself is not limited to supplemental jurisdiction over non-federal
claims. *See* 28 U.S.C. § 1367(a) (authorizing supplemental jurisdiction over "all other claims,"
provided that the other requirements of the statute are met).   And as Dr. Bloom notes, the
Supreme Court itself has articulated a circumstance where § 1367(a) could provide supplemental
jurisdiction over an otherwise jurisdictionally inadequate *federal* claim. *See Exxon*, 545 U.S.
at 562 ("[F]ederal-question jurisdiction once had an amount-in-controversy requirement . . . .   If
such a requirement were revived under [28 U.S.C.] § 1331, it is clear beyond peradventure that
§ 1367(a) provides supplemental jurisdiction over federal-question cases where some, but not all,
of the federal-law claims involve a sufficient amount in controversy.").

The Secretary contends that *Exxon* is distinguishable because the amount in controversy
requirement at issue in that case was derived from the diversity jurisdiction statute, 28 U.S.C.

5

§ 1332, not from the Medicare Act. (*See* Doc. 56 at 3.) The Secretary is correct that *Exxon* does not present the exact same situation as in this case. But the *Exxon* Court's comment about the availability of supplemental jurisdiction over jurisdictionally inadequate federal-law claims appeared in its discussion of a "contamination theory" governing the interaction of sections 1332 and 1367. As the Court explained, the "contamination theory" makes sense in the context of § 1332's complete diversity requirement: the presence of nondiverse parties "contaminates" the action and "eliminates the justification for providing a federal forum." *Exxon*, 545 U.S. at 562.

But the "contamination theory" makes little sense with respect to the *amount-in-controversy* requirement for diversity jurisdiction. As the Court concluded: "[T]he contamination does not occur with respect to jurisdictional defects that go only to the substantive importance of individual claims." *Id.* at 566. The Court offered the discussion of a hypothetical federal-question statute with an amount-in-controversy requirement to advance its analysis of the availability of supplemental jurisdiction in a diversity case over additional plaintiffs who do not satisfy the amount-in-controversy requirement.

Even though there is no longer an amount-in-controversy requirement for federal-question jurisdiction, original jurisdiction for certain federal claims is predicated on an amount-in-controversy threshold. For instance, district courts have original jurisdiction of an action brought under 42 U.S.C. § 11707 (the "Carmack Amendment"), but "only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs." 28 U.S.C. § 1337(a). The court in *Dress Barn, Inc. v. LTA Group, Inc.* addressed Carmack Amendment claims brought by Dress Barn, Inc. against a corporation with which Dress Barn had contracted to transport cartons of merchandise. Dress Barn claimed that 278 cartons went missing, with an aggregate value of more than $250,000, and with at least one shipment

6

containing in excess of $10,000 in merchandise. 822 F. Supp. 88, 89 (D. Conn. 1993). The court held that it had supplemental jurisdiction over Dress Barn's claims involving any shipments containing less than $10,000 in goods "because each carton shipped pursuant to the agreement 'forms part of the same case or controversy' as the shipment(s) which contained at least $10,000 in goods." *Id.* at 90.

The plain language of § 1367(a) and the Supreme Court's opinion in *Exxon* persuade this court that supplemental jurisdiction under § 1367(a) is not limited to state-law claims. *Dress Barn* may be another example. But the *Dress Barn* court did not seem to analyze the effect of 28 U.S.C. § 1337(a)'s apparent requirement that original jurisdiction is available only if "*each* [not "any"] receipt or bill of lading exceeds $10,000." This court need not delve into that question here, but it does hint at the next question that the court must address in this case: does any federal statute expressly withdraw the availability of supplemental jurisdiction?

## D.   "Expressly Provided Otherwise by Federal Statute"

If there are any federal statutes that prevent the court from exercising supplemental jurisdiction over the claims challenging the 2015 and 2017 MAC decisions, they are 42 U.S.C. §§ 405(g) and 1395ff. The Secretary does not identify any other constitutional or statutory impediment.

Initially, the court notes that sections 405(g) and 1395ff do not mention § 1367(a) or supplemental jurisdiction. Interpreting a similarly "except as otherwise expressly provided" clause in 28 U.S.C. § 1441(a), the Supreme Court has cautioned that an "express exception" requirement must be "take[n] seriously" and that it "must mean something more than any verbal hook for an argument." *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 696 (2003). Still, it does not appear that sections 405(g) and 1395ff must explicitly mention § 1367(a) or

7

supplemental jurisdiction in order to "expressly" provide an exception to the availability of supplemental jurisdiction. As discussed below, other statutes do so without actually mentioning the supplemental jurisdiction statute.

In its January 29, 2018 Opinion and Order, the court expressed concern about attempts to use § 1367 to avoid the aggregation rules in the Medicare Act. (*See* Doc. 50 at 15.) As the court previously concluded, Congress did not intend for the courts to be aggregating claims to meet the amount-in-controversy requirements of § 1395ff(b)(1)(E). (*Id.* at 11.) The court recognizes that application of § 1367(a) is different than the "aggregation" contemplated by § 1395ff(b)(1)(E)(ii). Exercising supplemental jurisdiction to review the 2015 and 2017 MAC decisions would not involve any "aggregation." But the question remains: do sections 405(g) and 1395ff constitute an express provision precluding the availability of supplemental jurisdiction? The court concludes that they do.

The hypothetical federal-question statute discussed in *Exxon*, 545 U.S. at 562, would not have foreclosed all review of claims falling below the amount in controversy. Indeed, that hypothetical statute would grant original jurisdiction for claims above the amount in controversy, but would presumably be silent about supplemental jurisdiction or withdrawing jurisdiction for any smaller claims. The *Exxon* Court's hypothetical did not contemplate any other provision of federal law that might limit the availability of supplemental jurisdiction.

Section 1395ff, on the other hand, completely precludes judicial review of any claim falling below the amount in controversy. Claims that are "channeled" into the special review system set up by that statute can be reviewed only under that system. *See Furlong v. Shalala*, 238 F.3d 227, 232 (2d Cir. 2001) (discussing claims for which review is by statute "channeled"

8

through the agency). And the supplemental jurisdiction statute cannot be used to attempt to obtain judicial review of a claim that Congress specifically stated was not subject to such review.

*United States v. Erika, Inc.*, 456 U.S. 201 (1982), is instructive on this point. There, the Supreme Court held that Congress's enactment of the Medicare statute "specifically precluded review in the Court of Claims [under the Tucker Act, 28 U.S.C. § 1491] of adverse hearing officer determinations of the amount of Part B payments." *Id.* at 207. Congress had omitted authorization for judicial review for determinations of the amount of Part B awards,[2] and the Court found that to be "persuasive evidence that Congress deliberately intended to foreclose further review of such claims." *Erika*, 456 U.S. at 208. Here, Dr. Bloom relies on the supplemental jurisdiction statute rather than the Tucker Act, but the result is the same. Congress's inclusion of an amount in controversy requirement under the special review system set up by § 1395ff indicates a deliberate intent to foreclose judicial review of claims not meeting that requirement.

Other cases involving the Tucker Act are also instructive. The so-called "Little Tucker Act," 28 U.S.C. § 1346(a)(2), gives the district courts concurrent original jurisdiction over non-tort claims against the United States for less than $10,000. If the amount of the claim exceeds $10,000, the "Big Tucker Act," 28 U.S.C. § 1491, gives the Court of Claims original jurisdiction. In *Dia Navigation Co., Ltd. v. Pomeroy*, 34 F.3d 1255 (3d Cir. 1994), a vessel owner sued in district court seeking reimbursement for the cost of detaining a group of Romanian stowaways. The claim was for $127,580. The plaintiff brought claims in federal district court under both the Administrative Procedure Act and the Tucker Act. It claimed that "the Claims Court's exclusive

---

[2] That limitation was removed when the Medicare Act was amended in 1987. *See* Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99–509, § 9341, 100 Stat. 1874, 2037–38 (1986) (codified at 42 U.S.C. § 1395ff (1992)).

9

jurisdiction [was] overridden by the Supplemental Jurisdiction Act." *Id.* at 1267. The court rejected the argument "in light of the Tucker Act's explicit jurisdictional bar." *Id.* Here, similar to the explicit jurisdictional bar in the Tucker Act, the Medicare Act includes an explicit bar on judicial review for claims not meeting the amount in controversy.

Although not involving the amount in controversy requirement, the decision in *ABC Home Health* also supports the court's conclusion. The court in that case held that the exhaustion requirement in 42 U.S.C. § 405(g) (that the claimant obtain a "final decision of the Secretary") was an "express" provision against asserting supplemental jurisdiction over unexhausted claims. *ABC Home Health*, 878 F. Supp. at 1580. The *ABC Home Health* decision highlights the importance of the special review system in the Medicare Act. All of that system's requirements for judicial review—including exhaustion and amount in controversy—must be met, otherwise judicial review is simply unavailable.

As the court previously observed, the Medicare Act is a remedial statute that should be construed broadly. (Doc. 50 at 8.) But for the reasons discussed above, the Act itself narrows the availability of judicial review for claims not meeting the amount in controversy requirement. The court notes that its conclusion does not necessarily prevent judicial review of sufficiently related smaller claims. Beneficiaries can still seek to have such claims aggregated at the administrative level.

## III.    Medicare Managed Care Manual

Apart from his argument under § 1357, Dr. Bloom asserts that the Medicare Managed Care Manual (MMCM) permits the district court to "combine" claims to meet the amount in controversy requirement. (Doc. 52 at 8.) He cites the following provision in that manual in a section entitled "Judicial Review":

10

Any party, including the Medicare health plan (upon notifying all the other parties), may request judicial review of an ALJ's decision if:

- The MAC adopted, modified, or reversed the ALJ decision; and
- The amount in controversy meets the appropriate threshold. . . .

*The enrollee may combine claims to meet the amount in controversy requirement.* To meet the requirement:

- All claims must belong to the same enrollee;
- The MAC must have acted on all the claims;
- The enrollee must meet the 60-day filing time limit for all claims; and
- The requests must identify all claims.

A party may not obtain judicial review unless the MAC has acted on the case – either in response to a request for review or on its own motion.

*Medicare Managed Care Manual*, CMS Pub. 100-16, Ch. 13, § 120, available at

https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/mc86c13.pdf

(emphasis added).

The Secretary maintains that Dr. Bloom has not shown why he did not raise this

argument sooner, and that the MMCM provides guidance on Medicare Part C (not claims such as

Dr. Bloom's arising under Part B). (Doc. 56 at 3–5.) Dr. Bloom replies that federal court

jurisdiction for Parts B and C is founded on the same statute, 42 U.S.C. § 405(g), and that the

statute must have the same meaning for appeals under both Parts. (Doc. 57 at 4–5.)

The court agrees with the Secretary that Dr. Bloom should not have waited until now to

raise his argument based on § 120 of the MMCM. Presentation of new arguments or theories is

generally inappropriate on a motion for reconsideration. *See Analytical Surveys, Inc. v. Tonga

Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). In any case, the provisions of § 120 of the

MMCM do not support Dr. Bloom's position.

The provisions of § 120 of the MMCM reflect the regulations set forth in 42 C.F.R.

§ 422.612. That section of the regulations, in turn, is premised on 42 U.S.C. § 1395w-22(g)(5).

And the statute does indeed make judicial review available as provided in 42 U.S.C. § 405(g). But unlike 42 U.S.C. § 1395ff(b)(1)(E) (relating to appeals for Part A and B determinations), § 1395w-22(g)(5) (relating to appeals for Part C) makes no reference to the availability of aggregation of claims at any level of review.  The different statutory structure may be a basis for the apparent availability of "combination" in the MMCM.  Although § 405(g) is cross-referenced by both 42 U.S.C. § 1395w-22(g)(5) and 42 U.S.C. § 1395ff(b)(1)(E), the differences in the underlying statutes cautions against importing the rules from one to the other.

Moreover, it is far from clear that the MMCM is purporting to make "combination" available for the first time in the district court, rather than simply stating that properly "combined" claims may remain "combined" to meet the amount in controversy for judicial review.  The former interpretation might exceed the Administration's authority.  *See Epstein v. Burwell*, No. CV 13-8728-GHK (CWx), 2014 WL 12591476, at *4 & n.9 (C.D. Cal. Aug. 5, 2014) (noting anti-aggregation doctrine and stating that even assuming that Part A and Part B aggregation provisions could apply to a Part D claim, the provisions would not permit aggregation for the first time in the district court).  The latter interpretation is comfortably within the Administration's power and consistent with the treatment of Part A and Part B claims.

## Conclusion

Plaintiff's Motion to Alter or Amend Judgment (Doc. 52) is DENIED.

Dated at Rutland, in the District of Vermont, this 15th day of May, 2018.

Geoffrey W. Crawford, Chief Judge
United States District Court