U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 JAN 16 AM 8: 29

CLERK

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| JONATHAN A. BLOOM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:16-cv-121 |
| ) | |
| ALEX M. AZAR, II, Secretary, United ) | |
| States Department of Health and Human ) | |
| Services, ) | |
| ) | |
| Defendant. ) | |

## ORDER ON MOTION FOR EAJA FEES AND COSTS
(Doc. 53)

Plaintiff Dr. Jonathan A. Bloom brought this action under 42 U.S.C. §§ 405(g) and 1395ff(b)(1)(A) seeking review of three decisions by the Medicare Appeals Council (MAC) denying his requests for Medicare payment of claims relating to a continuous glucose monitor (CGM), which he maintains is the "standard of care" for individuals who, like himself, suffer from "brittle" diabetes. Early in the case, the court denied the Health and Human Services (HHS) Secretary's motion to remand under the sixth sentence of § 405(g). (Docs. 17, 20.) In an Opinion and Order (O&O) dated January 29, 2018, the court held that the MAC erred in concluding that Dr. Bloom's CGM items are not covered by Medicare because they are "precautionary" and therefore are not "durable medical equipment" (DME) under the statute. (Doc. 50 at 19–22.) The court reversed and remanded one of the three MAC decisions with instructions to authorize coverage for the CGM items at issue. (*Id.* at 25.)[1] The court held that it lacked jurisdiction to review the other two MAC decisions (*id.*), and adhered to that position in

---

[1] Familiarity with the January 29, 2018 O&O is presumed.

denying Dr. Bloom's subsequent motion to alter or amend. (*See* Doc. 62.) Dr. Bloom has taken an appeal. (Doc. 75.)

Currently pending is Dr. Bloom's Motion for Fees and Costs under the Equal Access to Justice Act (EAJA). (Doc. 53.) The Secretary opposes the motion (Doc. 58), and Dr. Bloom has filed a reply (Doc. 59). After briefing was complete, Dr. Bloom filed three separate notices of subsequent authority (Docs. 60, 63, 66), and the parties filed numerous responses and replies to those notices (*see* Docs. 61, 64, 65, 78, 79). The parties also filed (and the court granted) three joint motions to stay any ruling on Dr. Bloom's motion for EAJA fees while the parties discussed the issue. (*See* Docs. 67, 69, 71.) The third extension of time has now expired, and the court took Dr. Bloom's EAJA motion under advisement on December 11, 2018.

## Analysis

Dr. Bloom contends that he is entitled to fees and costs under the EAJA because the Secretary's position that CGMs are not durable medical equipment was not "substantially justified." The EAJA provides, in relevant part, as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Under this fee-shifting provision, "eligibility for a fee award in any civil action requires: (1) that the claimant be a 'prevailing party'; (2) that the Government's position was not 'substantially justified'; [and] (3) that no 'special circumstances make an award unjust.'" *Gomez-Beleno v. Holder*, 644 F.3d 139, 144 (2d Cir. 2011) (alteration in original)

2

(quoting *Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990)). There is an additional requirement that (4) the claimant make a timely application. 28 U.S.C. § 2412(d)(1)(B).

Here, the Secretary concedes that Dr. Bloom is a prevailing party,[2] that he timely filed his application, and that no special circumstances exist that would make an award unjust. (Doc. 58 at 4.) However, the Secretary maintains that the position of the United States was "substantially justified."

I. **Whether the Position of the United States was Substantially Justified**

"The 'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." *Gomez-Beleno*, 644 F.3d at 145 (quoting 28 U.S.C. § 2412(d)(2)(D)). The court accordingly considers the Secretary's litigation position in this case as well as the relevant underlying administrative decisions of the Administrative Law Judges (ALJs) and the MAC. *See id.* "A position is substantially justified if it is 'justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.'" *Id.* (quoting *Jean*, 496 U.S. at 158 n.6). "The Government bears the burden of showing that this standard has been met—*i.e.*, that the position of the United States 'had a reasonable basis in both law and fact.'" *Id.* (quoting *Vacchio v. Ashcroft*, 404 F.3d 663, 674 (2d Cir. 2005)).[3]

---

[2] The Secretary also apparently does not dispute that Dr. Bloom is an eligible "party" as defined by 28 U.S.C. § 2412(d)(2)(B).

[3] Dr. Bloom asserts that the Secretary must make a "strong showing" to satisfy its burden. (Doc. 53 at 4; Doc. 59 at 2.) That statement adds little to the court's review. The standard is the same standard that is articulated in *Gomez-Beleno* and *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). *See Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 81 n.1 (2d Cir. 2009) ("To the extent our recent decision in *Healey v. Leavitt* [485 F.3d 63, 67 (2d Cir. 2007)] indicates that the government must make a 'strong showing' to satisfy its burden under § 2412(d)(1)(A), . . . we do not understand that case to impose a standard higher than that set forth in *Pierce v. Underwood*.").

According to Dr. Bloom, the "substantially justified" inquiry can be decided simply with reference to "the fact that for nearly four years the Secretary denied Dr. Bloom CGM coverage on the grounds that a CGM is not 'primarily and customarily used for a medical purpose.'" (Doc. 53 at 6.) Dr. Bloom asserts that the Secretary's position is "at odds with reality." (*Id.*) The Secretary maintains that it was reasonable to rely on local coverage determination (LCD) L11530, local coverage article (LCA) A33614, and the guidance contained in the *Medicare Benefit Policy Manual* (MBPM). (Doc. 58 at 7.)[4]

## A.  Objective Indicia

The Supreme Court has stated that objective indicia, such as the views of other courts on the merits, "can be relevant" to a "substantially justified" inquiry. *Pierce v. Underwood*, 487 U.S. 552, 568 (1988). The *Pierce* Court observed:

> Obviously, the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified. Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose. Nevertheless, a string of losses can be indicative; and even more so a string of successes.

*Id.* at 569. Because objective indicia can be relevant, the court considers the opinions of other decisionmakers, including ALJs and other courts, in analyzing the Secretary's position that Dr. Bloom's CGM was not covered by Medicare.[5] The court is mindful, however, that such objective indicia might not "provide a conclusive answer, in either direction." *Id.* at 568.

---

[4] The court discussed LCD L11530 and LCA A33614 in its January 29, 2018 O&O. (Doc. 50 at 17–19.) The court also reviewed the relevant provisions of the MBPM. (Doc. 50 at 21.)

[5] The court reviews ALJ and MAC decisions for the additional reason that they are part of the "position of the United States."

4

### 1. ALJ Decisions

Dr. Bloom asserts that the Secretary's position was at odds with numerous ALJ decisions.[6] The Secretary does not quarrel with that representation, but maintains that the ALJ decisions are non-precedential and do not suggest that the Secretary's position was not substantially justified. (Doc. 58 at 10.) The Secretary also notes that there are other administrative decisions that are consistent with the Secretary's position. (*Id.* at 10 n.7.)[7] Dr. Bloom concedes that ALJ decisions are non-precedential "because they are supposed to be based on the facts of a particular beneficiary, and not broad coverage policy." (Doc. 59 at 5 n.7.)[8] But Dr. Bloom asserts that the Secretary, when adjudicating CGM claims, has not

---

[6] As the court previously noted, Dr. Bloom obtained a favorable decision from ALJ Bennett Engelman on June 23, 2015. (*See* Doc. 50 at 6.) Dr. Bloom represents that "[b]y 2018, at least 40 ALJs in more than 55 ALJ decisions had found that a CGM qualifies as durable medical equipment ('DME') that is covered by Medicare and rejected the Secretary's position." (Doc. 53 at 3.) Dr. Bloom also relies on an April 2016 opinion of HHS's Departmental Appeals Board (DAB), Civil Remedies Division. (*Id.* at 7.) Although not directly cited in Dr. Bloom's briefing, he appears to be referring to ALJ Keith W. Sickendick's decision in *In re: Local Coverage Determination Complaint: Glucose Monitors (L11530/L33822 and Local Coverage Articles A33614/A52464)*, DAB No. CR4596, 2016 WL 2851236 (HHS Departmental Appeals Bd., Civil Remedies Div., Apr. 29, 2016). The ALJ in that case concluded that "[t]he provision of the constructive LCD contained in LCD L11530/L33822 and LCA A33614/A52464 that states '[c]ontinuous glucose monitors (A9276-A9278) are considered precautionary and therefore not covered under the DME [durable medical equipment] benefit,' is not valid under the reasonableness standard." *Id.* at *18 (alteration in original).

[7] As the court previously noted, three different ALJs rendered unfavorable decisions in CGM DME cases brought by Dr. Bloom. (*See* Doc. 50 at 7.) The Secretary cites three other unfavorable ALJ decisions as well. (Doc. 58 at 10 n.7.)

[8] Case law supports this proposition. *See Whitcomb v. Burwell*, No. 13-CV-990, 2015 WL 5254518, at *3 (E.D. Wis. Sept. 9, 2015) (describing ALJ decisions in DME benefits appeal as non-precedential); *Almy v. Sebelius*, 749 F. Supp. 2d 315, 321 (D. Md. 2010) ("The ALJ's decision is similarly non-precedential and is required to be based on the evidence in the administrative record." (citing 42 C.F.R. § 405.1046)). Of particular relevance, the decision of an ALJ or the MAC to disregard an LCD or the MBPM "applies only to the specific claim being considered and does not have precedential effect." 42 C.F.R. § 405.1062(b).

premised denials on the medical condition of any beneficiary, but instead "on a policy of non-coverage." (Doc. 59 at 5 n.7.)

Dr. Bloom's assertion that the Secretary acted on the basis of a "policy of non-coverage" begs the question. Such a simplistic "policy" could not be substantially justified. But the Secretary's position, of course, is quite different. The Secretary maintains that the basis for the denials of coverage for the CGM "was directly related to the statutory and regulatory language guiding all coverage generally, and all coverage decisions regarding DME." (Doc. 58 at 6.) The court discusses that argument below. For present purposes, the court notes that claimants seeking coverage for CGMs have experienced mixed results from ALJs.[9]

## 2. Decisions of Other Courts

Dr. Bloom also urges this court to consider the decisions of other courts that have addressed whether Medicare covers CGMs. Dr. Bloom relies on two decisions postdating this court's January 29, 2018 O&O—*Whitcomb v. Hargan*, No. 17-CV-14 (E.D. Wis. June 12, 2018), ECF No. 34 ("*Whitcomb II*"), and *Lewis v. Azar*, 308 F. Supp. 3d 574 (D. Mass. 2018)[10]—and two predating the January 29, 2018 O&O: *Whitcomb v. Hargan*, No. 17-CV-14, 2017 U.S. Dist.

---

[9] The court notes that Dr. Bloom appears to have cited a substantially greater number of favorable ALJ decisions than the Secretary has cited unfavorable ALJ decisions on this issue. It is unclear whether the set of ALJ decisions cited by the parties represents a complete accounting of all relevant ALJ decisions, but even if it does, the court would not rest its "substantially justified" analysis solely on the number of favorable ALJ decisions compared to unfavorable ALJ decisions.

[10] Dr. Bloom highlighted *Lewis* in his (first) notice of subsequent authority (Doc. 60) and *Whitcomb II* in his (third) notice of subsequent authority (Doc. 66). Dr. Bloom asserts that his (second) notice of subsequent authority (Doc. 63) relates to the issue of deterrence rather than the issue of "substantial justification." (*See* Doc. 65 at 1.) The court acknowledges that one purpose of EAJA is "to deter the government from bringing unfounded suits or engaging in arbitrary or unjust administrative behavior." *Oguachuba v. INS*, 706 F.2d 93, 98 (2d Cir. 1983). In light of the conclusions below, the court finds it unnecessary to set forth a detailed analysis on the issue of "deterrence."

6

LEXIS 216571 (E.D. Wis. Oct. 26, 2017) ("*Whitcomb I*"); and *Finigan v. Burwell*, 189 F. Supp. 3d 201 (D. Mass. 2016). The Secretary maintains that the decisions of other courts do not undermine the substantial justification of his position. (Doc. 58 at 9.)

The *Finigan* court stated in a footnote that "the Secretary's construction of the term 'precautionary' to include CGMS because Finigan's CGMS is 'not intended to replace [Finigan's] traditional blood glucose monitoring[,]' but only to supplement it . . . is head-scratching, or at least under-explained." *Finigan*, 189 F. Supp. 3d at 207 n.6 (alteration in original). The *Finigan* court further stated:

> The Secretary's argument here seems to go: since Finigan uses CGMS to monitor her diabetes symptoms in conjunction with another piece of equipment, her CGMS cannot be "durable medical equipment." It is far from clear, though, why the fact of her having other equipment is dispositive: the CGMS, as used by Finigan, helped her manage her diabetic symptoms, and, while it would not qualify were the category "Primary Device Used to Treat Symptoms," her blood-testing regime seems irrelevant to whether her CGMS is "durable medical equipment."

*Id.* But the *Finigan* court did not need to resolve this issue to decide the case. The *Finigan* court's footnoted statements suggest that court's concern but do not amount to a determination on the "position" at issue in this case.

The decision in *Whitcomb I*, in contrast, is directly on point. The Secretary in that case asked the court to give substantial deference to guidance in the MBPM and in a local coverage article that CGMs are "precautionary." The court declined to do so, holding that "[t]he regulation defining durable medical equipment, as that term is used in the Act, is clear on its face." *Whitcomb I*, 2017 U.S. Dist. LEXIS 216571, at *13. Considering 42 C.F.R. § 414.202(3)'s requirement that DME must be "primarily and customarily used to serve a medical purpose," the court remarked that "[t]he Secretary has never articulated what non-medical purpose it believes a continuous glucose monitor primarily and customarily serves."

7

*Whitcomb I*, 2017 U.S. Dist. LEXIS 216571, at \*14. The court reasoned that even if the regulatory definition of DME is ambiguous, the agency's interpretation was unreasonable because it "defies the syntax of this definitional phrase" and because the agency's interpretation "does not provide any guidance on what type of equipment will satisfy its reformulated definition." *Id.* at \*14–15. The *Whitcomb I* court also concluded that the MAC's unfavorable decision was arbitrary and capricious, and contrary to numerous other final decisions. *Id.* at 18.

The Secretary acknowledges the *Whitcomb I* decision but asserts that one other district court decision—which is not binding on this court—does not constitute a "string of losses" and does not render the Secretary's position "not substantially justified." (Doc. 58 at 10.) Dr. Bloom maintains that the Secretary has suffered a "string of losses" before multiple ALJs and in *Finigan*, *Whitcomb I*, and this case. (Doc. 59 at 6.) That "string of losses" was extended, according to Dr. Bloom, by the decision in *Lewis*. (Doc. 60 at 1.)[11] The *Lewis* court rejected the Secretary's argument that CGMs serve a "precautionary" purpose, reasoning that "[t]he Secretary's assertion that a device loses its medical nature if it is used in conjunction with another medical device is contrary to law." *Lewis*, 308 F. Supp. 3d at 579 (citing *Finigan*, 189 F. Supp. 3d at 207 n.6). The Secretary argues that *Lewis* is not relevant to the "substantially justified" inquiry here because *Lewis* was decided after this court's January 29, 2018 O&O. (Doc. 61 at 1–2.)[12]

---

[11] In addition to *Lewis*, Dr. Bloom also cites the *Whitcomb II* decision. (Doc. 66.) *Whitcomb II* is a decision on the plaintiff's petition for fees and costs in that case. It was a loss for the Secretary insofar as the court awarded fees and expenses to the plaintiff. But *Whitcomb II* was not a loss on the merits of the Secretary's position—that loss was sustained earlier in *Whitcomb I*. The court considers *Whitcomb II* in its analysis below.

[12] The Secretary also notes that the April 5, 2018 decision in *Lewis* was issued after the Secretary was initially successful on a motion to dismiss on mootness grounds. (*See* Doc. 61 at 1 n.1.) But the inquiry here has nothing to do with whether the Secretary's mootness argument in that case was substantially justified.

If the court's inquiry was limited to determining whether court decisions put the Secretary on notice of a substantially unjustified position, then the court would conclude that *Lewis* is irrelevant. But the Secretary cites no authority for the proposition that the court's review is so limited. On the other hand, to the extent that *Lewis* adds to a "string" of losses in court, that string is relatively short. Only a handful of district courts have issued opinions on the Secretary's position; the court would not rely solely on this small sample of court opinions to conclude that the position of the United States was not substantially justified. Notably, though, the district court decisions seem to be uniformly adverse to the Secretary's position.

In sum, having considered ALJ and court decisions, the court concludes that—as in *Pierce*—it is necessary to analyze "the actual merits of the Government's litigating position." *Pierce*, 487 U.S. at 569. The court turns to that issue next.[13]

### B. Actual Merits of Government's Litigating Position

#### 1. The Secretary's Position is Unsupported

The Secretary's position in this litigation has been to attempt to defend the three unfavorable MAC decisions as reasonable interpretations and as supported by substantial evidence. The Secretary argued that the MAC decisions properly relied on LCD L11530, LCA A33614, and the MBPM to determine that Dr. Bloom's CGM is not "primarily and customarily used to serve a medical purpose," as required by 42 C.F.R. § 414.202(3). The gist of

---

[13] The court cannot help but observe the very substantial quantity of administrative and (more recently) judicial effort devoted to the question of whether CGMs are DME. At the December 19, 2017 motion hearing, the court asked "why after all these years we're still having this question" (Doc. 48 at 11), and "[w]hy isn't there a consistent national rule?" (*Id.* at 14.) One obvious fix, of course, would be to specifically discuss CGMs in 42 U.S.C. § 1395x(n)— just as blood testing strips and blood glucose monitors are discussed in that statutory provision. A National Coverage Determination (NCD) would also set a national policy. There can be advantages to the development of the law on a case-by-case basis, but on the issue presented here, case-by-case development appears to have run its useful course. (A January 2017 CMS Ruling has impacted policy in this area; the court discusses that ruling below.)

those documents is that CGMs are not DME because CGMs are "precautionary." (*See* Doc. 50 at 19, 21.) The Secretary maintains that it was reasonable to rely on LCD L11530 and LCA A33614 "because these documents include information regarding whether Plaintiff's CGM satisfied statutory and regulatory criteria for DME." (Doc. 58 at 8.) Similarly, the Secretary asserts that it was reasonable to rely on the MBPM because that document contains the "'informed judgments' of those most familiar with the Medicare program." (*Id.*)

Of course it makes sense for the MAC and the Secretary to refer to relevant guidance documents when analyzing if an item qualifies as DME. The court did the same thing in its January 29, 2018 O&O. (Doc. 50 at 18.) But on this issue, the guidance in those documents does not withstand even cursory scrutiny.

As the court previously concluded, "[n]o record evidence suggests that CGMs are used for any nonmedical purpose." (Doc. 50 at 19.) There was evidence that Dr. Bloom continues to monitor his blood glucose levels with a finger stick, that the CGM must be calibrated, and that a finger stick is still required for therapy adjustment. (*Id.*) But none of those facts support a conclusion that Dr. Bloom's CGM is not "primarily and customarily used to serve a medical purpose." (*See id.* at 19–20.)[14] Attempting to analyze whether CGMs are "precautionary" does not advance the inquiry (*see* Doc. 50 at 19), and to the extent "precautionary" means backup or emergency equipment, there is no evidence that Dr. Bloom uses his CGM as such (*id.* at 21). In short, no reasonable person would be satisfied by the Secretary's position that CGMs are not primarily and customarily used to serve a medical purpose.

---

[14] The Secretary persists with the argument that Dr. Bloom "must take an additional action in order to treat his diabetes." (Doc. 58 at 9.) This argument overlooks the medical purpose of CGMs: to supply close to real-time information about glucose levels. (*See* Doc. 50 at 20.)

10

### 2. *Whitcomb II*

This court is not alone in its assessment. The court in *Whitcomb II* similarly concluded that the Secretary's position is not substantially justified. The *Whitcomb II* court held that "there is no reasonable basis for arguing that continuous glucose monitors are not primarily and customarily used to serve a medical purpose." *Whitcomb II*, No. 17-CV-14, at 4.[15] The court agrees with the *Whitcomb II* court's conclusion and the analysis supporting it.

The court rejects the Secretary's attempts to distinguish *Whitcomb II* on this issue. The Secretary asserts that the courts denied EAJA fee requests in *Finigan*, No. 15-12246 (D. Mass. Sept. 15, 2016), ECF No. 37, and in *Whitcomb v. Burwell*, No. 13-CV-990, 2015 WL 5254518, at *3 (E.D. Wis. Sept. 9, 2015).[16] But the "position" in question in both of those decisions was related to a different issue: whether it was legal error to give deference to policy articles or to refer to them for coverage determinations. The courts in both cases found that it was error, but stopped short of determining whether the CGMs were DME, and instead remanded the cases for further proceedings.

In this case, the Secretary took positions on *both* issues. Early in this case, the Secretary sought a sentence-six remand on the basis that the MAC appeared to have erroneously given substantial deference to a policy article. The Secretary asserts that his request for a sentence-six remand early in this case was substantially justified and that Dr. Bloom should recover no fees related to the litigation in this case on that issue. (Doc. 78 at 2.) For the reasons stated in the September 15, 2016 *Finigan* decision and the September 9, 2015 *Whitcomb* decision, the Secretary's position on that preliminary procedural issue may have been substantially justified.

---

[15] A copy of the *Whitcomb II* decision appears in this court's record at Doc. 66-1.

[16] The 2015 *Whitcomb* decision involves the same plaintiff but is a different case than *Whitcomb I* and *Whitcomb II*, above.

But the bulk of the litigation in this case related to the Secretary's related position on the substantive issue of whether Dr. Bloom's CGM is DME. The court has discretion to award a fee for the entire case even if some of the Secretary's claims or defenses were reasonable. *See* 10 Moore's Federal Practice – Civil § 54.172 & n.66 (2018). The court will exercise that discretion here and will not deny fees related to the litigation over whether to remand under sentence six.

### 3. The Secretary's Remaining Arguments are Unpersuasive

The court rejects the Secretary's remaining arguments. The Secretary asserts that the "consistency" of his position "highlights his prudent and reasonable approach." (Doc. 58 at 9.) But consistency on a position does not prove that the position is substantially justified. *See* Oliver Wendell Holmes, Jr., *The Path of the Law*, 10 Harv. L. Rev. 457, 469 (1897) ("It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV."); *see also Whitcomb II*, No. 17-CV-14, at 5–6 (reasoning that "foolish consistency" demonstrates the unreasonableness of the Secretary's position).

The Secretary also asserts that CMS Ruling No. 1682-R (Jan. 12, 2017)—extending coverage to "therapeutic" CGMs—"confirms the Secretary's consistent position." (Doc. 58 at 9.) Dr. Bloom maintains that CMS Ruling No. 1682-R is not evidence of substantial justification, but is instead "evidence of the Secretary's intransigence." (Doc. 59 at 5.) The court previously noted the issuance of CMS Ruling No. 1682-R, but also noted that it does not apply in this case, since Dr. Bloom's CGM items were furnished before the effective date of the ruling. (*See* Doc. 50 at 22 n.8.) The court is reluctant to comment on a ruling that does not apply in this case, but for present purposes it is sufficient to observe that, insofar as CMS

Ruling No. 1682-R is offered to support the Secretary's "consistency" argument, that argument is unpersuasive for the reasons stated above.

### C.     Conclusion as to "Substantial Justification"

For the reasons stated above, the court concludes that the Secretary has not met his burden of showing a reasonable basis in both law and fact to support the position of the United States as to whether Dr. Bloom's CGM items are DME. Since there is no dispute that the remaining requirements of 28 U.S.C. § 2412(d)(1)(A) are satisfied in this case, Dr. Bloom is entitled to an award of costs and fees under § 2412.

## II.     Amount of Award

The parties dispute the amount of the award to which Dr. Bloom is entitled. The following statutory provision governs the amount of an award of fees and expenses in this case:

> "[F]ees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees[.] (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.)

28 U.S.C. § 2412(d)(2)(A). In his March 1, 2018 motion, Dr. Bloom requests an award of $90,324.12 in fees and expenses under § 2412(d)(2)(A). (Doc. 53 at 6.) He requests fees exceeding $125 per hour on the basis of both a cost of living adjustment and the "special factor" adjustment. (*Id.* at 9–12.)

The Secretary does not dispute the requested cost of living adjustment, but argues that no "special factor" enhancement should be applied to attorney fees. (Doc. 58 at 11.)[17] The Secretary also asserts that certain of Dr. Bloom's requested costs do not appear to be directly related to this case, and that Dr. Bloom should not be awarded any fees or costs associated with his unsuccessful jurisdictional arguments. (*Id.* at 14.) Dr. Bloom maintains that the "special factor" fee enhancement is appropriate, and has revised the fee calculation to reflect additional expenses incurred in the fee briefing and briefing on the motion to alter or amend the January 29, 2018 O&O. (*See* Doc. 59 at 7–8.) Dr. Bloom requests a revised fee and cost award exceeding $120,000. (*See id.* at 9–10.)

### A. "Special Factor" Adjustment

The "special factor" exception to the $125-per-hour cap "must refer to attorneys 'qualified for the proceedings' in some specialized sense, rather than just in their general legal competence." *Healey v. Leavitt*, 485 F.3d 63, 68 (2d Cir. 2007) (quoting *Pierce*, 487 U.S. at 572). The exception "refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of general lawyerly knowledge and ability useful in all litigation." *Id.* (quoting *Pierce*, 487 U.S. at 572).

Plaintiff asserts that attorneys Debra Parrish and James Pistorino of the Parrish Law Offices both qualify for the "special factor" exception. (Doc. 53 at 10–11.) Ms. Parrish has a degree in biomechanical engineering and was previously employed as an attorney with HHS. (Doc. 53-3 ¶¶ 3, 5.) She has been representing Medicare beneficiaries since 1995 and has participated in hundreds of ALJ hearings in the Medicare appeals process. (*Id.* ¶ 5.) Attorney Pistorino "has over 20 years' experience litigating matters in federal court," and worked "under

---

[17] It does not appear that the Secretary disputes the requested paralegal fees.

14

Ms. Parrish's guidance in drafting much of the pleadings in this case." (Doc. 53 at 11.) Attorney Pistorino customarily charges a lower rate than Attorney Parrish, so Plaintiff asserts that it was economical for Attorney Pistorino to perform work that Attorney Parrish would have otherwise done herself. (*Id.*) Plaintiff maintains that, since ALJ decisions are not generally publicly available, the Parrish Law Office had unique knowledge about the state of CGM litigation. (*Id.* at 10.)

The Secretary acknowledges Attorney Parrish's accomplishments, but asserts that litigation of this case did not require scientific expertise or experience litigating similar cases. (Doc. 58 at 13.) The Secretary also argues that Attorney Pistorino's qualifications do not warrant a fee enhancement. (*Id.*) Plaintiff maintains that "the Parrish Law Office's distinctive knowledge and specialized skill in handling Medicare CGM cases was necessary for this litigation." (Doc. 59 at 7.)

The court concludes that the combination of Attorney Parrish's training and experience plus her unique knowledge of the state of CGM litigation are sufficient to justify her customary rate under § 2412(d)(2)(A)(ii). The *Whitcomb II* court reached the same conclusion regarding Attorney Parrish. *Whitcomb II*, No. 17-CV-14, at 7–8. The court appreciates Attorney Pistorino's experience and efforts, but the record does not support a conclusion that he possesses distinctive knowledge or specialized skill needful for this litigation.

Dr. Bloom was also represented by local counsel in this case: attorneys Craig Nolan and Justin Brown from Sheehey Furlong & Behm P.C. Plaintiff seeks an award at the customary rates charged by attorneys Nolan and Brown. (*See* Doc. 53 at 6.) The Secretary argues that the contributions of attorneys Nolan and Brown do not qualify for a fee enhancement. (Doc. 58 at 14.) As with Attorney Pistorino, the court appreciates Attorney Nolan and Attorney Brown's

15

experience and efforts, but the record does not support a conclusion that they possess distinctive knowledge or specialized skill needful for this litigation.

## B. Reasonableness of Fees and Costs

Section 2412(d)(2)(A) of Title 28 expressly requires that awards of expenses and fees must be "reasonable." "A fee applicant has the burden of establishing the reasonableness of the award." *Anderson v. Sebelius*, No. 5:09-cv-16, 2011 WL 1832771, at *3 (D. Vt. May 12, 2011). "The court must determine whether the applicant has met that burden, but 'need not . . . scrutinize[] each action taken or the time spent on it.'" *Id.* (alterations in original) (quoting *Torres v. Barnhart*, No. 02 Civ. 9209(AJP), 2007 WL 1810238, at *14 (S.D.N.Y. June 25, 2007)). The "most useful starting point" in the reasonableness analysis is the "lodestar" method: multiplying the number of hours reasonably expended by a reasonable hourly rate. *Id.* "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983)).

The court's conclusions above establish the reasonable hourly attorney rates. Regarding hours expended, Parrish Law Offices billed approximately 172 attorney hours and Sheehey Furlong & Behm billed approximately 35 attorney hours. (*See* Doc. 59 at 10.) The Secretary argues that some of those billed hours should not be included in the fee award. In particular, the Secretary asks the court to exclude time billed for work relating to proceedings before ALJ Chinn. The Secretary argues that the appeal to ALJ Chinn "was not part of any of the three [MAC] decisions at issue in this case." (Doc. 58 at 14.) Dr. Bloom replies that those billed hours were spent reviewing ALJ Chinn's decision finding CGM coverage and determining "whether and how to integrate that decision in this case." (Doc. 59 at 8.) The court concludes that researching that favorable ALJ decision was a reasonable expenditure of time.

16

The Secretary also asserts that Dr. Bloom should not recover for time billed associated with his unsuccessful jurisdictional arguments or his unsuccessful motion to alter the judgment. (*See* Doc. 58 at 14 & n.10.) Dr. Bloom's reply does not address that argument. In a response to Dr. Bloom's third notice of subsequent authority, the Secretary lists several categories of fees and costs that, according to the Secretary, should not be included in the award. (*See* Doc. 78-1.) The Secretary requests a "further opportunity" to provide a line-by-line analysis of Dr. Bloom's counsels' billing statements. (Doc. 78 at 5.)

Dr. Bloom argues that the Secretary's position in Document 78 is an improper attempt to use a response to the notice of subsequent authority to raise new arguments. (Doc. 79 at 1.) Dr. Bloom opposes any further briefing, correctly noting that an application for attorney's fees "should not result in a second major litigation." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988 (2016) (quoting *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 766 (1989)). Dr. Bloom maintains that failure to prevail on every issue is not a sufficient reason for reducing a fee award. (Doc. 79 at 4.)

Regarding procedure, the court concludes that the Secretary's March 15, 2018 opposition fairly raised an argument for reducing the award for failure to prevail on certain issues. Plaintiff is correct that, when a plaintiff has obtained excellent results, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. But a reduction is appropriate where the plaintiff has achieved "only partial or limited success." *Id.* at 436.

Here, Dr. Bloom has achieved sufficient success to be the undisputed prevailing party. But the Secretary succeeded on his claim that the court lacked jurisdiction to review two of the three MAC decisions at issue. Because the extent of success is a crucial factor in determining a

17

proper fee award, the court concludes that some reduction is appropriate in this case. Although the court may ultimately decide to apply a percentage reduction, the court finds that the interests of justice favor a complete airing of the Secretary's challenges to line items on the billing statements. The court will accordingly grant a limited opportunity for supplemental briefing.

## Conclusion

Plaintiff's Motion for EAJA Fees and Costs (Doc. 53) is GRANTED IN PART. Because the Secretary's position as to whether Dr. Bloom's CGM is DME was not "substantially justified," Plaintiff is entitled to an award of fees and costs under 28 U.S.C. § 2412.

Regarding the amount of the award, Plaintiff is entitled to an upward "special factor" adjustment solely for Attorney Parrish under 28 U.S.C. § 2412(d)(2)(A)(ii). The court RESERVES ruling on the precise amount of the award pending additional briefing on reasonableness. The Secretary may file a supplemental brief within 14 days of the date of this Order. Plaintiff may file a response within 14 days of service of the Secretary's supplemental brief. Plaintiff's opposition should include updated calculations to reflect the court's rulings above. The supplemental briefs shall not exceed 10 pages.

Dated at Rutland, in the District of Vermont, this 16 day of January, 2019.

Geoffrey W. Crawford, Chief Judge
United States District Court